IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENWALD CATERERS INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-811 |
| | : | |
| v. | : | |
| | : | |
| LANCASTER HOST, LLC d/b/a and a/k/a | : | |
| LANCASTER HOST RESORT, d/b/a and | : | |
| a/k/a WYNDHAM LANCASTER | : | |
| RESORT & CONVENTION CENTER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                    April 22, 2022

A high-end catering company contracted with a resort to hold a large event consisting of hundreds of guests for Passover in 2019. The parties' agreement also allowed the catering company to hold the event at the resort for the following four years, provided the catering company exercised its option to do so in accordance with the terms of the agreement.

When the parties executed the agreement, the resort was in the process of extensively renovating due, in large part, to it recently becoming a franchise of a major hotel chain. These renovations concerned the catering company and its guests because they wanted the resort to be prepared to hold the Passover event in 2019. When the catering company or the guests expressed these concerns to the resort, it continuously told them that it would be ready when guests arrived. Unfortunately, when the guests did start to arrive for Passover, many of them encountered significant issues with the accommodations at the hotel. Some of the rooms were uninhabitable, some of the common areas were unusable, other common areas were poorly maintained, and there was insufficient housekeeping to clean the rooms, bathrooms, and common areas.

The catering company has now filed a complaint against the resort, asserting claims for breach of contract, breach of express and implied warranties, breach of the implied duty of good faith and fair dealing, unjust enrichment, promissory and equitable estoppel, declaratory judgment, and common law and implied indemnification. The catering company requests numerous forms of relief, including, *inter alia*, compensatory and punitive damages, statutory damages under a municipality's property maintenance code, specific performance, and a declaration that the resort, and not the catering company, is liable for any damages to individuals who attended the event. The hotel has moved to dismiss (1) any requests for punitive damages, (2) claims for damages under a municipality's property maintenance code, (3) any requests for specific performance, and (4) the causes of action for breach of express or implied warranties, breach of the implied duty of good faith and fair dealing, unjust enrichment, promissory or equitable estoppel, declaratory judgment (one of the two causes of action), and common law and implied indemnification.

As discussed below, the court will grant the motion to dismiss in part and deny it in part. The court will grant the motion and (1) strike with prejudice (a) the claims for punitive damages and (b) any requests for damages based on violations of the municipal property maintenance code, (2) strike without prejudice the requests for specific performance, (3) dismiss with prejudice the breach of implied warranties claims only insofar as they are based on the municipal property maintenance code or the Pennsylvania Landlord-Tenant Act of 1951, (4) dismiss without prejudice the claims for (a) breach of express warranty, (b) unjust enrichment, (c) promissory estoppel, and (d) implied or common law indemnification, and (5) dismiss with prejudice (a) the breach of implied duty of good faith and fair dealing claim and (b) equitable estoppel claim. In all other respects the court will deny the motion to dismiss. The court will give the catering company leave to file an amended complaint.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, Greenwald Caterers Inc. ("Greenwald"), commenced this action by filing a complaint against the defendant, Lancaster Host, LLC, d/b/a and a/k/a Lancaster Host Resort, d/b/a and a/k/a Wyndham Lancaster Resort & Convention Center ("Lancaster Host"), on March 4, 2022. *See* Doc. No. 1. In the complaint, Greenwald alleges that it "is a high-end caterer who has for decades served the needs of the Orthodox Jewish Community," "has been involved in organizing hotel programs and kosher tours around the world for over thirty years," and "specializes in custom kosher celebrations." Compl. at ¶ 2; *see also id.* at ¶¶ 21–28. Lancaster Host owns and operates a resort in East Lampeter, Pennsylvania, which was known as The Lancaster Host Resort (the "Resort"). *See id.* at ¶ 3.

Since approximately 2008, Greenwald has used Resort as its site for an annual Passover event because it

> has very specific attributes and amenities that are of value to observant Jews, particularly during the Sabbath and holidays, such as suites of adjoining rooms, kitchen facilities that can be used for Kosher cooking, and other amenities. [It also] provides other amenities of interest to Greenwald's clients such as: a golf course and pool, access to shops, restaurants, and Dutch Wonderland amusement park, and a prime location between Philadelphia and New York.

*Id.* at ¶ 3; *see also id.* at ¶¶ 31–37.

In 2016, Kalpesh Vakil ("Vakil") and his business partner, Jason Cheng ("Cheng"), bought the Resort and, by 2018, were anticipating the Resort becoming a Wyndham franchisee.[1] *See id.* at ¶¶ 5, 38. In 2018, the Resort became a Wyndham franchisee and was rebranded as the Wyndham Lancaster Resort & Convention Center. *See id.* at ¶¶ 8, 47. As part of this change, the Resort

---

[1] Greenwald alleges that both Vakil and Cheng are experienced and "savvy investors [who] understand the hotel renovation process and hospitality business." Compl. at ¶¶ 38–40. Vakil is the individual who "handles the day-to-day operations at the resort." *Id.* at ¶ 39.

required renovations to satisfy the pertinent Wyndham resort standards.[2] *See id.* at ¶ 9. The renovation process was estimated to take 18 months and cost $15 million. *See id.* at ¶ 42.

In the summer and fall of 2018, Greenwald and Lancaster Host began negotiating a new agreement for Passover events. *See id.* at ¶¶ 7, 44. During this time, construction on the renovations to the Resort were underway. *See id.* at ¶ 45.

In February 2019, Greenwald and Lancaster Host entered into an agreement for Passover events to be held at the resort (the "Agreement"). *See id.* at ¶ 44 and Ex. A. The Agreement "included many clauses intended to satisfy the needs, requirements, concerns, desires, etc. of [Greenwald] and its Group members." *Id.* at ¶ 46. In addition, the Agreement provided that Lancaster Host would reserve 317 rooms for the Passover event and would "endeavor to make its best efforts to accommodate room reservations and specific requests." *Id.* at ¶¶ 82–83. Lancaster Host also agreed to check all guestrooms 30 days prior to the event to, *inter alia*, "make sure that the rooms were in good and appropriate condition." *Id.* at ¶ 84.

Even prior to the execution of this agreement, Greenwald, its representatives, and other individuals who were planning on attending the 2019 Passover event, were checking on and inquiring of the progress of the renovations at the Resort to ensure that it was ready for the event.[3] *See id.* at ¶¶ 9, 10, 50, 52. In response to inquiries about the status of the renovations, Lancaster

---

[2] According to Greenwald,

> Wyndham standards include and are not limited to "features that you would expect in a world class hotel, including beautifully appointed lounge areas, smartly detailed guest rooms, distinctive dining options, and well-designed meeting spaces." . . . "Wyndham offers thoughtful versatility . . . in destinations around the word. Both business and leisure travelers know they can trust the Wyndham name. That trust, combined with a strong reputation, makes Wyndham a powerful upscale option."

Compl. at ¶ 49 (second alteration in original) (footnote omitted).

[3] Greenwald asserts that many families intending to attend the Passover event pay "tens of thousands of dollars for their family's (often multi-generational) attendance." Compl. at ¶ 50. Overall, families "paid in excess of $2 million for what was expected to be a spectacular resort[-]like holiday event." *Id.* at ¶ 51.

Host and its representatives ensured that the premises would be "appropriately and sufficiently completed" and ready for the Passover event. *Id.* at ¶¶ 11, 55–59. Despite these assurances, Greenwald and its representatives observed that construction was not being completed and the Resort was not ready for the Passover event. *See id.* at ¶¶ 60, 62. They observed, among other things, (1) cats in the hotel that were being used to help against mice, (2) rooms were missing door handles and beds, (3) many of the rooms were dirty, (4) equipment was left in rooms where the equipment did not belong, including equipment that was not Kosher for Passover, (5) a lack of appropriate air conditioning, (6) electrical wires and outlets being exposed, (7) exposed lead paint, (8) uncarpeted guestrooms on the first floor, and (9) an incomplete business center in the main area. *See id.* at ¶¶ 61, 63–71. Many of these observations and concerns were relayed to Lancaster Host, and it responded by reiterating that the facilities would be completed and fully functional by the 2019 Passover event, "subject to there being just a few limited public areas not yet ready for use or full use." *Id.* at ¶¶ 72, 74–75.

In April 2019, just prior to the Passover event, approximately 10 to 20 individuals who were going to attend the event traveled to the Resort to check on the status of the hotel out of concern that it was not ready for the event. *See id.* at ¶ 76. They were assured by Vakil that the premises would be ready for the event. *See id.* at ¶ 77.

Also in April 2019, a Greenwald representative e-mailed the Passover event's attendees' room requests to the hotel sales manager. *See id.* at ¶ 86. The manager confirmed the room requests and any changes and affirmed that the room requests would be honored. *See id.* at ¶ 87.

When the Passover event started, Isaac Greenwald, Greenwald's principal, arrived to set up private Seder rooms and to otherwise ensure that the Resort was set up according to the Agreement. *See id.* at ¶ 91. After examining the premises, he realized that the Resort was not set

up for the event. *See id.* Nevertheless, he attempted to make do because Passover was quickly approaching, the attendees were not able to return to their homes as they had anticipated being in the hotel for Passover, and there were no alternative locations for the event. *See id.* at ¶¶ 92–95.

Once attendees began to arrive at the Resort, they realized that it was not properly prepared for them. *See id.* at ¶ 96. Many of the "rooms and substantial areas were not renovated or prepared to the level they should have been, were not working, were not furnished, were not up to industry, Wyndham and other agreed[-]upon standards, were in complete disarray, were not cleaned, were under construction, and were unusable." *Id.* at ¶ 98. Some of the issues included (1) cat litter and cat waste smells "deeply inundating various . . . rooms," (2) "plumbing issues and sewage backed up in the bathtubs and worse on the floor and in many of the rooms," (3) mouse droppings, unmade beds, furniture not in place, missing requested cots, missing doors, and inoperable air conditioners, (4) cockroaches, (5) rooms not being properly prepared for Kosher meals, (6) rooms lacking mattresses, linens, and other basic items, (7) visible mold, (8) rooms with a lack of water and showers, and (9) exposed nails. *See id.* Overall,

> [a]t least 6 rooms were completely unusable, at least 25 others contained large amounts of construction dust or were otherwise not prepared, and various other rooms had issues making them not usable, such as lacking doors and working air conditioning and then with various unsafe and unsanitary sewer, feces, foul odor and other such conditions. Furthermore, at least 30 rooms and suites had sewage backups and lacked water and sewer services for as long as days at a time and cleaning and daily maid services substantially failed to alleviate these and other problems as plead herein.

*Id.* at ¶ 100.

Guests at the event went to the front desk to complain about the issues with their rooms. *See id.* at ¶ 104. When they did, "they were often treated rudely and ignored and sometimes moved to different rooms that they displaced and/or disrupted other guests' preplanned and preselected and reserved room selections." *Id.* Due to all the complaints and the issues at the front desk,

6

Greenwald's maître d' had to "babysit[]" the front desk and field the complaints, Greenwald had to bring in and pay extra staff to take on some of the maître d's duties, incur extra expenses when guests had to be placed at a neighboring hotel, and make concessions such as free food and exclusive seders. *See id.* at ¶¶ 105–07.

In addition to issues with the rooms at the hotel, other areas of the hotel were also substantially unprepared for the Passover event. *See id.* at ¶ 110. One of these areas was the kitchen, which was not properly furnished or prepared for the event's Kosher needs. *See id.* at ¶ 111. This forced Greenwald to build a kitchen facility outside the hotel at an extra expense of at least $25,000-$30,000. *See id.* at ¶ 113.

Additional issues included the failure of Lancaster Host to provide water and electricity for a tent Greenwald brought to the premises, Lancaster Host supplying the event with table and dining linens of a "dismal quality," and a failure to have operational laundering facilities. *See id.* at ¶¶ 114–15. These issues required Greenwald to provide electricity for the tent at additional expense to it and spend an additional $10,000 to rent clean and appropriate linens. *See id.* at ¶ 115. There were also numerous other issues, including, *inter alia*, (1) the pool and business center being unusable, (2) the lack of available public bathrooms, (3) improperly functioning heating and air conditioning, (4) the presences of debris and other dangerous conditions in the outside areas of the Resort, (5) the front entrance of the hotel being under construction and covered in construction debris, (6) attendees in wheelchairs having only one place for entering and exiting, and (7) the lack of a Sabbath elevator until the middle of the program. *See id.* at ¶¶ 118–22. Greenwald asserts that due to these issues, it received hundreds of complaints daily. *See id.* at ¶ 126.

Along with the issues with the rooms and various areas of the premises, Greenwald experienced significant housekeeping problems at the Resort. *See id.* at ¶ 130. There were not

enough housekeepers to keep up with the daily cleaning of guest rooms and public areas. *See id.* at ¶ 131. Bedlinens were not timely changed. *See id.* at ¶ 132. The sewage backup that occurred in some rooms was not cleaned for several days. *See id.* at ¶ 134. Trash filled up in rooms and in the hallways. *See id.* at ¶ 140. It also appeared that the housekeepers on hand were directed to only clean when attendees left, instead of cleaning daily. *See id.* at ¶ 133. Due to these issues, Greenwald requested to bring in private housekeeping, but Lancaster Host denied this request. *See id.* at ¶ 135. Lancaster Host instead brought in housekeeping staff from one of Vakil's other facilities. *See id.* at ¶ 136. Greenwald alleges that these additional staff-members stole attendees' items from their rooms. *See id.* at ¶ 136.

Both during the Passover event and thereafter, attendees sought refunds or reimbursement due to their "horrible experience" at the hotel. *See id.* at ¶ 181. Although Greenwald's Passover events were considered "the Cadillac of such events," Lancaster Host "destroyed the program and severely harmed and tarnished [Lancaster Host's] reputation." *Id.* at ¶ 224. Greenwald had to cancel its Rosh Hashana 2019 program of hundreds of people, which was to take place at the Resort. *See id.* at ¶ 226. Long-time customers and their families abandoned Greenwald, causing it to suffer significant losses in revenue. *See id.* at ¶¶ 227–28. Greenwald even had issues working with another Lancaster hotel due to Greenwald's tarnished reputation stemming from the 2019 Passover event. *See id.* at ¶ 230.

Based on these allegations, Greenwald asserts several causes of action against Lancaster Host: (1) breach of contract; (2) breach of implied and explicit warranties; (3) breach of Pennsylvania's implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) promissory and equitable estoppel; (6) declaratory judgment (two counts); and (7) common law and implied indemnification. *See id.* at 54–63. Greenwald also seeks several forms of relief,

including compensatory, consequential, pecuniary, incidental, punitive, and statutory damages, attorney's fees, costs, declaratory judgments, and specific performance. *See id.* at ¶¶ 237–51. Among these requests for relief, Greenwald seeks, *inter alia*, (1) $5 to $10 million in lost profits and business opportunities because it could not have the remaining agreed-to Passover events at the Resort, damaged its reputation, and lost other events and bookings, (2) $2 million for damages incurred by attendees at the Passover event seeking reimbursement or refunds, (3) in excess of $50,000 for its attempts to mitigate problems at the Passover event, (4) in excess of $30,000 in compensatory costs and overcharges for things it should not have had to pay for under the Agreement, (5) in excess of $400,000 for the return of all payments it made to Lancaster Host for the 2019 Passover event, (6) in excess of $20,000 it had to spend to create a special "Mexican night" cigar and wine event it created to try to pacify the attendees, (7) the return of a $30,000 security deposit, and (8) $1,000 per violation of the Lancaster Property Maintenance Code. *See id.* at ¶¶ 208, 238–48, and pp. 56, 57.

In response to the complaint, Lancaster Host filed the instant motion to dismiss and supporting memorandum of law on April 5, 2022. *See* Doc. Nos. 8, 9. Greenwald filed a brief in opposition to the motion on April 14, 2022. *See* Doc. No. 11. Lancaster Host filed a reply brief on April 21, 2022. *See* Doc. No. 12. The motion to dismiss is now ripe for disposition.

## II.   DISCUSSION

### A.   <u>Standard of Review – Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)

(citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "The defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citation omitted).

### B.    <u>Analysis</u>

In the motion to dismiss, Lancaster Host asserts multiple grounds for dismissing various portions of the complaint.[4] First, Lancaster Host contends that Greenwald has failed to plausibly allege an entitlement to punitive damages in its causes of action for breach of contract, breach of warranty, breach of the duty of good faith and fair dealing, and unjust enrichment. *See* Def.'s Br. at 3–4. Second, Lancaster Host argues that the Lancaster City Property Maintenance Code is irrelevant to this case and Greenwald cannot recover $1,000 per violation of this code. *See id.* at 4–5. Third, Lancaster Host claims that Greenwald has not pleaded a claim for specific performance because there is nothing for Lancaster Host to perform under the Agreement. *See id.* at 5–6. Fourth, Lancaster Host asserts that Greenwald has failed to sufficiently identify any express or implied warranty that would support its cause of action for breach of warranty. *See id.* at 6–8. Fifth, Lancaster Host argues that there is no cause of action for breaching Pennsylvania's implied duty of good faith and fair dealing and, even if there was such a cause of action, it would not apply in this case due to the presence of the Agreement. *See id.* at 8–9. Sixth, Lancaster Host contends that Greenwald has failed to state a plausible claim for unjust enrichment because the complaint lacks allegations that Greenwald conferred any benefits on it. *See id.* at 9–10. Seventh, Lancaster Host asserts that Greenwald has not stated a plausible claim for promissory or equitable estoppel. *See id.* at 10–11. Eighth, Lancaster Host argues that the court should dismiss the second of Greenwald's two counts seeking a declaratory judgment because it seeks duplicative relief of the relief sought in its breach of contract claim. *See id.* at 11–12. Finally, Lancaster Host contends that Greenwald has failed to state a plausible claim for implied or common law indemnification because it does

---

[4] Lancaster Host points out that pursuant to the "Dispute Resolution" provision of the Agreement, all disputes are governed by Pennsylvania law. *See* Def.'s Br. in Supp. of Mot. to Dismiss Counts I (in part), II, III, IV, V, VII, and VIII of Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s Br.") at 2 and n.2, Doc. No. 9. Greenwald has not contested that Pennsylvania law applies in this case.

not allege a secondary liability relationship and it cannot assert an indemnification claim in this contract case. *See id.* at 13–15.

The court will address each of these arguments in turn.

### 1. Greenwald's Requests for Punitive Damages

Greenwald has asserted an entitlement to punitive damages if successful in this litigation on its claims for breach of contract, breach of implied and express warranties, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *See* Compl. at ¶¶ 237, 249, 276 and pp. 56, 57, 58, 59. Lancaster Host seeks to have the court strike these claims for punitive damages because a plaintiff may not recover punitive damages for breach of contract or breach of warranty. *See* Def.'s Br. at 3 (citations omitted). In addition, even if Pennsylvania recognized a cause of action for breach of the implied warranty of good faith and fair dealing, Lancaster Host contends that punitive damages are unavailable to Greenwald for any such breach. *See id.* at 4. Moreover, punitive damages are unavailable for unjust enrichment. *See id.*

In response, Greenwald believes that Lancaster Host's arguments about its punitive damages claims are "premature and unwarranted." Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl.'s Mem.") at 5, Doc. No. 11. Greenwald argues that the arguments are premature because the facts are undeveloped, Lancaster Host has yet to answer the complaint, and the parties have yet to engage in discovery. *See id.* It contends that the arguments are unwarranted because punitive damages are permissible under Pennsylvania law for breach of contract where a defendant acted willfully and maliciously. *See id.* at 5–6 (citation omitted). It also asserts that punitive damages are awardable in connection with hotel owners' breaches of duties to the public. *See id.* at 6. In particular, Greenwald claims that it has sufficiently alleged that Lancaster Host continuously misrepresented the status of the Hotel and its readiness

for the Passover event to prevent Greenwald from exercising its right to cancel or move the event, it provided rooms unfit for habitation, and it committed various violations of the Americans with Disabilities Act and Pennsylvania consumer protection statutes. *See id.* at 6–7. Greenwald also asserts that it can obtain punitive damages on equitable claims such as unjust enrichment and estoppel. *See id.* at 7.

The court first addresses Greenwald's assertion that it is premature for the court to review its claims for punitive damages. In general, "the **<u>availability</u>** of punitive damages is subject to the development of the factual record." *Witbeck v. Equip. Transp., LLC*, Civ. A. No. 1:17-CV-498, 2022 WL 625719, at *2 (M.D. Pa. Mar. 3, 2022) (emphasis added). Thus, in many instances "this is an inherently factual inquiry not appropriately resolved on a motion to dismiss." *Servis One, Inc. v. OKS Group, LLC*, Civ. A. No. 20-4661, 2021 WL 6069168, at *1 n.1 (E.D. Pa. May 14, 2021) (citing *De Oca v. Beato*, No. 3:17-CV-837, 2018 WL 3371919, at *5 (M.D. Pa. May 31, 2018)); *see also Andrews v. D2 Logistics, Inc.*, Civ. No. 1:21-CV-869, 2022 WL 178817, at *6 (M.D. Pa. Jan. 19, 2022) ("[B]ecause the question of whether punitive damages are proper often turns on the defendants' state of mind, this question frequently cannot be resolved on the pleadings alone, but must await the development of a full factual record at trial." (citation omitted)). "Therefore, where a plaintiff's right to punitive damages may turn on the significance afforded to disputed factual questions, defendants are not entitled to a judgment in their favor on the plaintiff's punitive damages claims as a matter of law at the outset of the litigation." *Andrews*, 2022 WL 178817, at *6 (citations omitted); *see also Jones v. Francis*, Civ. A. No. 13-4562(SRC), 2013 WL 5603848, at 3 n.3 (D.N.J. Oct. 11, 2013) ("Requests for this type of relief, while boilerplate, embody a central tenet of notice pleading under the federal rules, even post *Twombly* and *Iqbal*—

once a plaintiff plausibly states his cause of action, subsequent discovery may reveal facts that bring to light previously unknown but nevertheless appropriate redress.").

Despite the general preference for determining the viability of punitive damages at the close of discovery, it is not premature for this court to resolve Lancaster Host's claim that the court should strike any requests for punitive damages from the complaint because Lancaster Host is not arguing that the allegations in the complaint are insufficient to support an award of punitive damages. Instead, Lancaster Host is arguing that punitive damages are unavailable as a matter of law as a form of relief in four of Greenwald's causes of action. As this is not an instance where the court would be concerned with subsequent discovery revealing an entitlement to punitive damages on these causes of action, the court will proceed to address Lancaster Host's arguments in its motion.

Regarding Greenwald's breach of contract claim, Lancaster Host correctly points out that Lancaster Host cannot recover punitive damages if it prevails on this claim. "[U]nder Pennsylvania law, punitive damages are not recoverable in a breach of contract claim." *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017); *see Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 496 A.2d 840, 844 (Pa. Super. 1985) (concluding that "punitive damages will not be assessed for mere breach of contractual duties, where no recognized trespass cause of action . . . arose out of the same transaction"); *Thorsen v. Iron and Glass Bank*, 476 A.2d 928, 932 (Pa. Super. 1984) ("The law is clear that punitive damages are not recoverable in an action for breach of contract." (citations omitted)); *see also Barnes v. Gorman*, 536 U.S. 181, 187 (2002) ("[P]unitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract." (citations omitted)).

Although Greenwald boldly asserts that Lancaster Host "wrongly states the law of Pennsylvania" regarding the recovery of punitive damages for breach of contract, it is the party which has wrongly stated the law. In support of its position that punitive damages are recoverable for a breach of contract, Greenwald cites to *Macdonald v. Winfield Corp.*, 93 F. Supp. 153 (E.D. Pa. 1950), for the proposition that "punitive damages can be awarded as an exemplary relief in matters arising from a breach of contract where Defendant performed 'willfully and maliciously' against the Plaintiff." Pl.'s Mem. at 5–6. Simply put, *Macdonald* has no applicability to this case.

While the plaintiffs in *Macdonald* had asserted a cause of action for breach of contract, he had also prosecuted a cause of action for unfair competition. *See* 93 F. Supp. at 155. Although the court in *Macdonald* considered awarding punitive damages, it did so only on the plaintiffs' unfair competition claim after already concluding that the defendant unfairly competed with the plaintiffs and after awarding compensatory damages. *See* 93 F. Supp. at 162. At no point did the court state that the plaintiffs were entitled to punitive damages for any willful or malicious conduct with respect to their breach of contract claim. *See, e.g., id.* at 160 ("The defendant's competition with the plaintiff has been clearly unfair and malicious."). Moreover, and most importantly, even though *Macdonald* was a decision in this District, it did not involve the application of Pennsylvania law; rather, it involved Virginia law. *See id.* at 162–63 ("I am also of the opinion that the case is plainly one for exemplary damages. 'That the willful and unauthorized destruction of one's business is ground for the imposition of punitive damages on the wrongdoer has been settled in this state ever since the decision of *Peshine v. Shepperson* (17 Grat. 472, 58 Va. 472, 94 Am.Dec. 468).'" (quoting *Anchor Co. v. Adams*, 124 S.E. 438, 439 (Va. 1924))). Accordingly, *Macdonald* is inapplicable to this case and does not warrant this court deviating from the proposition that punitive damages are not recoverable for breach of contract under well-established Pennsylvania law.

Concerning Greenwald's breach of implied and "explicit" warranties claim in count II of the complaint, the court again agrees with Lancaster Host that punitive damages are not recoverable under this cause of action. *See Citizens Bank of Pa. v. Chevy Chase Bank*, No. Civ.A. 03-CV-5208, 2004 WL 875499, at *3 (E.D. Pa. Mar. 22, 2004) ("Punitive damages are not recoverable under the UCC for breach of warranty. Furthermore, punitive damages are not recoverable under Pennsylvania common law for breach of warranty. A claim for breach of warranty arises under the law of contracts." (internal citations omitted)); *see also Thorpe v. Bollinger Sports, LLC*, Civ. A. No. 14-4520, 2015 WL 3400919, at *3 (E.D. Pa. May 27, 2015) (explaining that, regardless of whether plaintiff's breach of warranty claim arose under UCC or Pennsylvania common law, "punitive damages are not available under either theory" (citing *Citizens Bank*, 2004 WL 875499, at *3)). Greenwald contests this conclusion, and seemingly does so based on a single decision, *Cerreta v. Red Roof Inns, Inc.*, No. 4:16-cv-706, 2016 WL 4611689 (M.D. Pa. Sept. 6, 2016). *See* Pl.'s Mem. at 6–7. Contrary to Greenwald's argument, this case does not support this court concluding that punitive damages are recoverable for a breach of warranty.

In *Cerreta*, the plaintiffs, a husband and wife, rented a room at a Red Roof Inn on the day prior to the wife having morning "cancer surgery on her tongue." 2016 WL 4611689 at *2. While sleeping in the room, the plaintiffs were bitten numerous times by bed bugs. *See id.* When notified about the issue with the bed bugs, an individual at the Red Roof Inn's front desk stated that they were familiar with bed bugs being in the rooms because they were present there prior to this incident. *See id.*

The plaintiffs then sued Red Roof Inns under multiple theories of liability, including breach of contract, breach of the implied warranty of habitability, negligence, negligent infliction of emotional distress, and loss of consortium. *See id.* at *3. The plaintiffs sought punitive damages in

their requests for relief. *See id.* Red Roof Inns moved to dismiss the request for punitive damages in part because they are unavailable on the plaintiffs' claims for breach of contract and breach of the implied warranty of habitability. *See id.*

The Middle District denied the motion to dismiss the punitive damages claim because it had "consistently held that it is premature to dismiss demands punitive [sic] damages prior to discovery." *Id.* (citation omitted). The court pointed out that the plaintiffs "alleged that Red Roof had knowledge of bedbugs at its hotel, and yet knowingly, willfully and maliciously exposed them to these insects." *Id.* The court concluded that these allegations were "sufficient to survive a motion to dismiss, as discovery is necessary as to explore these issues." *Id.*

The court then went on to state that

although "[a]s a general rule, punitive damages are not recoverable in an action for breach of contract," and "traditional contract remedies are the only remedies available to enforce the implied warranty of habitability," "that rule is no bar to an award of such damages where, as here, the breach of contract also amounts to a recognized tort." "Only where the person who breaks a contract also breaches some duty imposed by society will compensatory or punitive damages be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent." "The fact that a plaintiff pleads causes of action in both tort and contract is no basis for denial of punitive damages; Pennsylvania Rule of Civil Procedure 1020 permits such alternative pleading, and requires no election of remedies." In fact, the contrary is true, "in order to recover punitive damages, a plaintiff must plead some sort of recovery in tort which arises out of the same transaction." Plaintiffs have plead that a bed bug free hotel room is a duty imposed by society. I agree.

*Id.* (internal footnotes omitted).

Greenwald appears to interpret *Cerreta* as stating that if a plaintiff's allegations supporting a breach of contract also constitute a breach of a societal duty, then punitive damages are recoverable even without the assertion of a companion tort claim. *See* Pl.'s Mem. at 6–7. Greenwald is mistaken.

In the first instance, although Red Roof Inns' motion to dismiss was partially focused on an argument that the plaintiffs could not recover punitive damages for breach of contract and breach of an implied warranty, Red Roof Inns had also argued that the plaintiffs had failed to state a claim for punitive damages generally. *See id.* at *3. It is therefore unclear whether the court's discussion in the above block quote, which is dicta insofar as the court had already stated that it would not dismiss a punitive damages demand prior to discovery, was focused on the plaintiffs' ability to recover punitive damages for a breach of contract or breach of warranty. Nevertheless, if the court had intended to state that a plaintiff could recover punitive damages for a breach of contract, this court would not follow that conclusion because, as already stated, there is well-established Pennsylvania law holding that a plaintiff may not recover punitive damages for a breach of contract.[5]

Further, Greenwald focuses on a single sentence in *Cerreta* where the court stated: "Only where the person who breaks a contract also breaches some duty imposed by society will compensatory or punitive damages be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent." Pl.'s Mem. at 6 (quoting *Cerreta*, 2016 WL 4611689, at *3 (quoting *Daniel Adams Assocs., Inc. v. Rimbach Publ'g Inc.*, 429 A.2d 726, 728 (Pa. Super. 1981))). Greenwald appears to believe that this language means that it can recover punitive damages for a breach of contract or breach of warranty. This court does not interpret the language the same way.

---

[5] Another district court's decision or conclusion is persuasive and not binding authority on this court. *See, e.g.*, *Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 558 (E.D. Pa. 2010) ("The recent decisions to which Defendant refers have all been decided by courts in California, Texas and Illinois. These cases are at best persuasive authority which this Court is not obligated to follow."); *Just Enters., Inc. v. O'Malley & Langan, P.C.*, 560 F. Supp. 2d 345, 353 (M.D. Pa. 2008) ("The United States District Court for the Western District of Missouri is a coordinate court to this one; any decision from that court would have only persuasive authority on this one.").

To the extent that this sentence could possibly be interpreted as permitting punitive damages for a breach of contract, the court again respectfully disagrees with the Middle District. When the Middle District included this sentence in the opinion, it quoted from the Pennsylvania Superior Court's decision in *Daniel Adams Associates, Inc. v. Rimbach Publishing Inc.*, 429 A.2d 726 (1981). In *Daniel Adams Associates*, the Superior Court affirmed a trial court's decision in striking a claim for punitive damages. 429 A.2d at 727–28. Although the Superior Court specifically focused on the failure of the plaintiff to include factual allegations which would support an award of punitive damages, *see id.* at 728,[6] the court also explained that under Pennsylvania law a plaintiff may pursue claims arising in tort or contract based on a single transaction. *See id.* The court then explained that a plaintiff could not recover punitive damages for "a breach of mere contractual duties." *Id.* Instead, the plaintiff must allege a breach of "some duty imposed by society" to justify punitive damages "against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent." *Id.*

At no point in this decision does the Superior Court state that a plaintiff pursuing a claim for breach of contract can recover punitive damages for that breach. Instead, this decision is reasonably interpreted as requiring a plaintiff to plead an actionable tort (even if the factual allegations giving rise to the tort also amount to a breach of contract) to possibly recover punitive damages. *See, e.g.*, Rest 2d Torts § 908 cmt. b ("Punitive damages . . . are not permitted merely for a breach of contract. When, however, the plaintiff has a right in the alternative to sue for a breach of contract or for a tort, the fact that his act or omission amounts to a breach of contract does not preclude the award of punitive damages if the action is brought for the tort and the tort is one for which punitive damages are proper."). The *Cerreta* court appeared to recognize this by

---

[6] The plaintiff appears to have asserted causes of action for breach of contract, unjust enrichment, detrimental reliance, wrongful interference with a business relationship, and punitive damages. *See Daniel Adams Assocs.*, 429 A.2d at 727.

stating that "to recover punitive damages, a plaintiff must plead ***some sort of recovery in tort*** which arises out of the same transaction" as the breach of contract. 2016 WL 4611689 at *3 (emphasis added). Here, Greenwald is specifically seeking punitive damages for breach of contract and breach of warranty, which it cannot do. It has not asserted an independent tort claim against Lancaster Host. Therefore, as Greenwald has not cited to any binding or persuasive authority that it can recover punitive damages for either a breach of contract or breach of express or implied warranty, the court will strike any requests for punitive damages as a form of recovery for these claims.

Regarding Greenwald's request for punitive damages under its cause of action breach of the implied covenant of good faith and fair dealing, it seemingly has not addressed whether it can recover punitive damages under this cause of action in its memorandum of law opposing the motion.[7] *See* Pl.'s Mem. at 5–7. Regardless, as this covenant is contractual in nature, the court concludes that Greenwald may not recover punitive damages against Lancaster Host under this cause of action as well. *See, e.g., Ignatius Press v. Archdiocese of Philadelphia*, No. Civ. A. 97-2854, 1998 WL 156977, at *1 (E.D. Pa. Mar. 31, 1998) ("Plaintiff concedes that his prayer for punitive damages in Count IV is misplaced as punitive damages are not available for any contractual breach of the duty of good faith and fair dealing." (citation omitted)).

Finally, as for Greenwald's request for punitive damages in its unjust enrichment claim, Greenwald contends that "[p]unitive damages can be a remedy for claims sounding in equity, even if there are other contract or quasi-contract claims." Pl.'s Mem. at 7 (citing *Lomberk v. Lenox*, No. 5404, 1989 WL 817148, 19 Phila. Co. Rptr. 562 (Philadelphia Cnty. Ct. Com. Pl. Sept. 19, 1989)). Greenwald is again mistaken.

---

[7] The court recognizes that Lancaster Host has moved to dismiss Greenwald's cause of action for breach of the implied duty of good faith and fair dealing. The court will address this part of the motion to dismiss later in this opinion.

The case Greenwald cites in support of its position here, *Lomberk*, which is a non-binding Court of Common Pleas decision, is inapplicable. *Lomberk* involved a plaintiff asserting that the defendant breached his fiduciary duties and seeking punitive damages for that breach. 19 Phila. Co. Rptr. at 581 ("[B]reach of the defendant's fiduciary duties may result in the imposition of punitive damages."). The Court of Common Pleas explained that "[a]lthough the general rule is that punitive damages are not recoverable for breach of contract, that rule is no bar to an award of such damages where, as here, the breach of contract **also amounts to a recognized tort**." *Id.* at 582 (emphasis added) (citations omitted). The court then explained "[b]reach of fiduciary duties is a recognized tort for which punitive damages may be recovered." *Id.* (citations omitted). The court also stated that "the fact that a plaintiff brings his suit in equity should be no bar to an award of punitive damages where, as here, grounds for an award thereof are properly pleaded and proven." *Id.* (footnote omitted).

Greenwald jumps at the Court of Common Pleas' reference to the word "equity" in this last sentence to support a claim that a plaintiff can be awarded punitive damages for a cause of action in equity. *See* Pl.'s Mem. at 7. The Court of Common Pleas, however, was not stating that a plaintiff asserting any equitable claim could also recover punitive damages. Rather, it was noting that a plaintiff proceeding under a Pennsylvania state trial court's equity jurisdiction could seek punitive damages if the plaintiff asserted a legal cause of action that was "properly pleaded and proven."[8] *See Lomberk*, 19 Phila. Co. Rptr. at 582. This interpretation of the Court of Common Pleas' decision is supported by the footnote accompanying the court's statement as it noted "that a plaintiff in equity may also join alternative equitable and/or legal causes [sic] of action in his

---

[8] The Court of Common Pleas' concern about having jurisdiction to award punitive damages while sitting in equity jurisdiction was evidenced by the court citing to another Court of Common Pleas decision, which explained that a court sitting in equity may "administer both equitable and legal relief." *Lomberk*, 19 Phila. Co. Rptr. at 582 n.25 (citing *Korman Corp. v. Franklin Town Corp.* 34 Pa. D. & C.3d 495, 519 (Philadelphia Cnty. Ct. Com. Pl. 1984)).

complaint." *Id.* at 582 n.25 (alteration in original). In addition, the court was only considering awarding punitive damages in an instance where the plaintiff was proceeding on a tort claim, namely a claim for a breach of fiduciary duty. At bottom, this court does not find that *Lomberk* supports denying Lancaster Host's motion to strike Greenwald's request for punitive damages in its unjust enrichment claim.

Instead, the court will strike Greenwald's request because it may not seek punitive damages against Lancaster Host for any unjust enrichment. *See Williamsburg Commons Condo. Ass'n v. State Farm Fire and Cas. Co.*, 907 F. Supp. 2d 673, 680 n.7 (E.D. Pa. 2012) ("Unjust enrichment (Count IV) is a 'quasi-contract' remedy for which punitive damages are not available." (citing *Motorola, Inc. v. Airdesk, Inc.*, No. 04–4940, 2005 WL 894807, at *3 (E.D. Pa. Apr. 15, 2005))); *see also Alfamodess Logistics, LLC v. Catalent Pharma Solutions, LLC*, Civ. A. No. 09-3543, 2014 WL 4545763, at *29 n.244 (E.D. Pa. Sept. 11, 2014) ("[T]he fact that wrongful intent is not a requirement also means that punitive damages are not available under the unjust enrichment rubric." (citations omitted)); *Danlin Mgmt. Group, Inc. v. The Sch. Dist. of Philadelphia*, No. 4527 Jan.Term2005, Control 41352, 2005 WL 2140314, at *3 (Philadelphia Cnty. Ct. Com. Pl. Aug. 29, 2005) ("Punitive damages cannot be awarded for breach of contract because they are inconsistent with traditional contract theory. As a corollary of this principle, punitive damages cannot be awarded for promissory estoppel, which creates an implied contract, or unjust enrichment that sounds in quasi-contract[.]" (internal citations omitted)). Accordingly, the court will strike the claim for punitive damages in Greenwald's unjust enrichment count as well.

### 2.   Greenwald's Request for Damages in the Amount of $1,000 Per Violation of the Lancaster Property Maintenance Code

Lancaster Host asserts that the court should strike Greenwald's claims for damages in the amount of $1,000 per violation of the Lancaster Property Maintenance Code (the "Code") in its

causes of action for breach of contract and breach of warranty, for four reasons. *See* Def.'s Br. at 4–5. First, it argues that the Code cannot apply in this case because it is promulgated by the City of Lancaster and the Resort is not located in this city; instead, as alleged in the complaint, it is located in East Lampeter Township. *See id.* Second, it contends that Greenwald has failed to reference any provision of the Agreement that imposes an obligation on it to comply with this Code. *See id.* at 5. Third, it points out that there are no "damages" available under the Code. *See id.* Finally, it argues that the Code does not apply to hotels/resorts such as the one operated by Lancaster Host. *See id.*

Greenwald has addressed Lancaster Host's arguments by indicating that it has not pleaded any cause of action based on the Code.[9] *See* Pl.'s Mem. at 7. Instead, it "merely references the Code to indicate breaches of the [Agreement] that arise from [Lancaster Host's] inability or refusal to comply with municipal regulations regarding hotel construction, operation and public accommodations." *Id.* at 8. To the extent it has referenced the wrong Code in the complaint, Greenwald states that it could merely amend the complaint to substitute the East Lampeter municipal code as Lancaster Host violated the provisions of that code as well. *See id.*

While Greenwald claims that it has not sought any relief based on a Code violation, its claim is belied by the express language it has used in the complaint. In the complaint, it clearly seeks "statutory damages of $1,000 per violation of the Lancaster Property Maintenance Code pursuant to § 238-11(B)(4)." Compl. at p. 56. The court cannot discern why Greenwald would deny seeking any relief based on the Code (outside of any violations supporting its breach of contract claim), when it is expressly seeking such relief in the complaint.

---

[9] Despite this statement, Greenwald's brief goes on to indicate that Lancaster Host has not "squarely address[ed]" whether Code violations could "create a private right to obtain monetary relief, or merely subject the property owner to a government fine." Pl.'s Mem. at 9. It then goes on to claim that Lancaster Host has "not shown that it is immune from suit for such code violations." *Id.*

Nonetheless, Greenwald has not included sufficient allegations that would permit it to obtain the statutory damages it seeks. As Lancaster Host notes, Greenwald cannot seek damages based on a code that it has not plausibly alleged that Lancaster Host had to comply with insofar as it alleges that the Resort is located in a completely different city. *See* Compl. at ¶ 3 (alleging that Lancaster Host "is a resort in East Lampeter Municipality in Lancaster County"). For this reason alone, the court will strike Greenwald's references to the Code and its request for $1,000 per violation of the Code.[10]

### 3.      Greenwald's Claim for Specific Performance

Lancaster Host contends that Greenwald has failed to plausibly plead a claim for specific performance in relation to its causes of action for breach of contract and breach of warranty. *See* Def.'s Br. at 5. Lancaster Host points out that the Agreement provides that Greenwald received four consecutive one-year options to hold Passover events at the hotel for 2020, 2021, 2022, and

---

[10] Although the court need not address Lancaster Host's claim that the $1,000 per violation provision in Code section 238-11(B)(4) "has nothing to do with hotels," it is at least somewhat unclear if this statement is accurate. It appears that Chapter 238 of the Code applies to Rental Property. *See* City of Lancaster Property Maintenance Code § 238, *available at*: https://ecode360.com/11460830. Among the definitions in this section of the Code is a definition for a hotel. *See* Lancaster Prop. Maint. Code § 238-1 (defining "HOTEL" as "[a] commercial lodging establishment that offers units for sleeping purposes to transient guests and which provides twenty-four-hour service for receiving and assisting guests"). In addition, section 238-9 of the Code states that

> [n]o person shall permit a rooming house, dormitory, **hotel**, multifamily dwelling (a building containing three or more dwelling units which is not a transient dwelling), transient dwelling or other residential rental property to be occupied unless he has first registered the residential rental property with the City and obtained a license. It shall be the duty of the owner, property manager or property management company to notify the City whenever any unit becomes occupied.

*Id.* § 238-9(A) (emphasis added). The Code goes on to provide that "[w]hoever violates any other provisions of this article shall be subject to a fine of not more than $1,000 or a term of imprisonment not exceeding 90 days, or both. Each month that a violation exists constitutes a separate violation." *Id.* § 238-11(B)(4). Based on this language, it would appear that a person permitting a hotel to be occupied without first getting an appropriate license from the City of Lancaster could potentially be subject to a fine of $1,000 or a term of imprisonment not exceeding 90 days.

In addition, while the court is not addressing whether a plaintiff such as Greenwald may maintain a private right of action for a violation of the Code, the court is wary that a private right of action is cognizable. *See Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1189 (Pa. 2007) (explaining that test to "determine whether a statute provides for a private remedy where the statutory language is not explicit" is "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff" (citations omitted)).

2023. *See id.* at 5–6. The Agreement also indicated that "if Greenwald 'fails to exercise an option, all other options will terminate' and the contract will come to an end." *Id.* at 6.

Lancaster Host asserts that the complaint lacks any allegation that Greenwald ever attempted to exercise its options for the years following the 2019 Passover event. *See id.* Without this condition precedent, it argues that "there is no basis on which to plausibly conclude [Lancaster] Host has any obligation to 'specifically perform' anything." *Id.* As such, Lancaster Host contends that the court should strike any requests for specific performance from Greenwald's breach of contract and breach of warranty claims. *See id.*

In opposing this part of Lancaster Host's motion to dismiss, Greenwald contends that it has not waived any options to hold future events at the Resort. *See* Pl.'s Mem. at 10. In fact, through this litigation, it points out that it is seeking "a judicial determination of its right to exercise the option." *Id.* More specifically, it "seeks an award of specific performance granting [it] the option to hold the event at the Defendant hotel for five or at least four years upon direction that the agreed upon, legal, industry, Wyndham, contractual and implied standards will be met." *Id.* at 11.

Greenwald also asserts that the COVID-19 pandemic acted "in the nature of a force majure that excused [its] performance to the extent of seeking to hold mass events during 2020 or 2021 according to the [Agreement]." *Id.* Greenwald notes that it would have been illegal in Pennsylvania to hold the Passover event in 2020 and "[i]t also arguably would have been considered impractical to do so in 2021, even if no government order forbade it." *Id.* Greenwald further points out that the parties had been disputing Lancaster Host's obligations to Greenwald both in 2019 and future years, so it is "absurd" to assert that "Greenwald should have formally exercised its option in March 2020 to hold an event that the Hotel could not in fact host." *Id.*

25

After considering these arguments, the court finds that the complaint currently lacks sufficient allegations to support a right to specific performance. Regarding specific performance generally,

> Pennsylvania law conforms to the general rules regarding the availability of specific performance. "Specific performance should only be granted ... where no adequate remedy at law exists." *Clark v. Pennsylvania State Police*, 496 Pa. 310, 436 A.2d 1383, 1385 (1981) (citing *Roth v. Hartl*, 365 Pa. 428, 75 A.2d 583 (1970)). "Equitable jurisdiction to grant specific performance," the Pennsylvania Supreme Court observed in 1986, "depends upon the 'inadequacy' of the remedy at law." *Petry v. Tanglwood Lakes, Inc.*, 514 Pa. 51, 522 A.2d 1053, 1056 (1987). Seventy years earlier the court had stated the principle in the following terms: "The mere fact that a remedy at law exists is not sufficient to oust equitable jurisdiction; the question is whether the remedy is adequate or complete." *Edison Illuminating Co. v. Eastern Pa. Power Co.*, 253 Pa. 457, 98 A. 652, 655 (1916). With respect to what constitutes an adequate remedy at law, the Pennsylvania Supreme Court has observed that "[a]n action for damages is an inadequate remedy when there is no method by which the amount of damages can be accurately computed or ascertained." *Clark*, 436 A.2d at 1385 (citing *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955)). Damages cannot be accurately ascertained "where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market." *Tomb v. Lavalle*, 298 Pa.Super. 75, 444 A.2d 666, 668 (1981).

*Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159–60 (3d Cir. 1999).

Here, the parties appear to agree that exercising the option for an upcoming year is an important feature of the parties' Agreement concerning Greenwald's ability to hold a Passover event at the hotel. Greenwald has not pointed to anything in the complaint which discusses this option (beyond alleging that it existed in the Agreement), whether Greenwald exercised it or, if not, the reasons for not exercising it. Greenwald has instead chosen to include those facts in its brief in opposition to the motion to dismiss. As the parties agree that Lancaster Host would not be obliged to allow Greenwald to hold the Passover event at its hotel unless it exercised the option to do so in the Agreement (or had a legally viable reason to excuse it from timely exercising the option), the only way Greenwald has a plausible claim for specific performance is if it includes

factual allegations which could justify specific performance. At this time, Greenwald has not done so. Therefore, the court will strike the claims for specific performance in counts I and II of the complaint without prejudice to Greenwald providing more factual support for the request for relief in an amended complaint.

### 4.     Greenwald's Causes of Action for Breach of Express and Implied Warranties

Lancaster Host contends that Greenwald has failed to state a plausible claim for a breach of any express or implied warranties in the complaint. *See* Def.'s Br. at 6–8. Regarding Greenwald's express warranty claim, Lancaster Host believes that Greenwald has failed to identify any express warranty it provided. *See id.* at 6–7. As for the cause of action for breach of implied warranties, Lancaster Host points out that Greenwald appears to reference only the implied duties of habitability and merchantability under the Landlord Tenant Act of 1951 (the "LTA") and the Code. *See id.* at 7. For these purported implied warranties, Lancaster Host asserts that Greenwald cannot claim that there is an applicable implied warranty under the LTA because it does not apply outside of landlord-tenant relationships. *See id.* In addition, the Code is inapplicable here because, *inter alia*, the Resort is not located in the City of Lancaster, the Code does not apply to hotels or resorts, and Greenwald has failed to point to any Code provision suggesting that implied warranties can arise under it in favor of a private party. *See id.* at 7–8.

In response to these arguments, Greenwald asserts that it has raised claims for breach of the Agreement's "implied and explicit warranties, including the express and/or implied warranties of hotel industry and Wyndham standards, and the implied warranty of habitability." Pl.'s Mem. at 11. Greenwald also appears to distance itself from potentially relying on the LTA or the Code insofar as it argues that it is claiming Lancaster Host breached implied warranties which are "separate and distinct from any statutory obligations that [Lancaster Host] also violated." *Id.* One

of these implied warranties is the implied warranty of habitability, which Greenwald contends Lancaster Host breached by providing unsafe, unsanitary, and uninhabitable accommodations at the hotel. *See id.* at 12. Greenwald also believes that Lancaster Host violated implied warranties that it would comply with hotel industry standards and the standards applicable to Wyndham hotels. *Id.*

Concerning Greenwald's claims for breach of express warranty, the court is concerned that Greenwald did not specifically address Lancaster Host's argument that it has failed to state a plausible claim in the complaint. The only potential reference to this argument is Greenwald's single, vague statement that it alleged that Lancaster Host breached "the express and/or implied warranties of hotel industry and Wyndham standards." Pl.'s Mem. at 11. Nevertheless, the court is still able to address Lancaster Host's argument by reviewing the complaint and the applicable law.

Unfortunately, the Pennsylvania caselaw this court located dealing with claims for breaches of express warranties and the requirements for a plausible cause of action under Pennsylvania law involve goods or products (and thus, in most instances, expressly discusses the application of Pennsylvania's version of the Uniform Commercial Code). *See, e.g.*, *Esposito v. I-Flow Corp.*, Civ. A. No. 10-3883, 2011 WL 5041374, at *6 (E.D. Pa. Oct. 24, 2011) ("Under Pennsylvania law, an express warranty 'arises out of the representations or promises of the seller . . . and must be directed at consumers in order to induce purchases of the products.'" (alteration in original) (quoting *Kester v. Zimmer Holdings, Inc.*, Civ. A. No. 10-523, 2010 WL 2696467, at *10 (W.D. Pa. June 1, 2010))); *Goodman v. PPG Indus.*, 849 A.2d 1239, 1243 (Pa. Super. 2004) (explaining that under Pennsylvania law, an express warranty is "specifically negotiated," thus, "the seller must expressly communicate the terms of the warranty to the buyer in such a manner

that the buyer understands those terms and accepts them"). No party specifically examines whether Pennsylvania's UCC could potentially apply to any express warranty claims in this case, although the cases referenced by Lancaster Host involve goods/products and, thus, the UCC. *See* Def.'s Br. at 6, 7 (citing *Brown v. C.R. Bard, Inc.*, No. 5:21CV-1552, 2022 WL 420914, at *10 (E.D. Pa. Feb. 11, 2022) and *Goodman*, 849 A.2d at 1245). Regardless, the complaint contains a fundamental flaw that would seemingly apply to any express warranty claim; it fails to identify the specific express warranties that Lancaster Host allegedly breached. *See, e.g.*, *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 543 (E.D. Pa. 2021) ("To plausibly plead an express warranty claim, some level of meaningful detail is required." (citation omitted)).

As noted by Lancaster Host, the complaint is 64 pages long and contains hundreds of averments. Greenwald clearly took great care to provide extensive detail supporting its claims in this case. It identifies numerous alleged issues with what occurred at the Resort during the 2019 Passover event there. Despite this high level of thoroughness and detail, it is unclear from reading the complaint what Lancaster Host warranted and, more importantly, which of those specific warranties Lancaster Host allegedly breached. Neither the court nor Lancaster Host should have to cobble through the numerous allegations in the complaint to try and ascertain the specific express warranties Lancaster Host purportedly made, whether Greenwald is claiming that those specific warranties were breached, and how they were breached.[11] Since the complaint lacks

---

[11] As an example of the court's difficulty with interpreting the complaint, Greenwald states at various points in the complaint that the hotel did not meet "Wyndham standards." *See, e.g.*, Compl. at ¶ 152 ("It is understood and believed that the property was not up to code during the event, let alone up to industry or Wyndham standards."). Greenwald also identifies a Wyndham standard as "features that you would expect in a world class hotel, including beautifully appointed lounge areas, smartly detailed guest rooms, distinctive dining options, and well-designed meeting spaces." *Id.* at ¶ 49. It is unclear from the complaint whether Greenwald is alleging that this standard constitutes an express warranty and, if so, whether it is part of its breach of express warranty claim in this case.

meaningful detail about Greenwald's express warranty claims, the court will dismiss this claim without prejudice to Greenwald repleading it in an amended complaint.[12]

Concerning Greenwald's claims for breaches of any implied warranties, it appears to be abandoning any claims based on implied warranties arising out of LTA or the Code as it does not argue that the court should recognize any warranties in the Code or the Act in its opposition brief. Even if it did not seemingly abandon the Code and LTA as a basis for an implied warranty, it has not pleaded a cognizable claim under the LTA or the Code.

As already discussed above, Lancaster Host could not have breached any implied warranties established by the Code because the Code does not apply to the Resort insofar as it is not located in the City of Lancaster. Regarding the LTA, which is codified at 68 P.S. §§ 250.101–250.602, it does not appear from the language of the Act that it applies to hotels or resorts. Greenwald has also not cited to any provision in the LTA which would support this court concluding that it applies to hotels or resorts or a case holding as such. Therefore, the court concludes that neither the LTA nor the Code can form the basis for any breach of implied warranty claim in this case.

This conclusion does not end the court's inquiry into Greenwald's breach of implied warranty claims because Greenwald points out that the claims go beyond relying on the LTA or the Code. *See* Pl.'s Mem. at 11–12. Greenwald states that it is claiming that Lancaster Host breached the implied warranty of habitability generally as well as implied warranties that the hotel would conform to hotel industry or Wyndham standards. *See id.* at 12. With at least the implied

---

[12] Per Rule 15 of the Federal Rules of Civil Procedure, "[t]he court should feely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, Greenwald has requested leave to amend should the court grant Lancaster Host's motion and dismiss any part of the complaint. The court will grant leave in this case because the court cannot state that Greenwald could never state a plausible claim for breach of an express warranty. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend may be denied . . . if amendment would be futile. An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." (internal citation omitted)).

warranty of habitability generally, Greenwald's explanation is supported by a reading of the complaint insofar as it does seemingly allege that Lancaster Host violated this warranty, without linking it to the Code or the LTA. *See* Compl. at ¶ 281 ("It was stated and/or implied that the Defendant's Hotel was and would be habitable, fit for human habitation, fit for reasonably intended uses and would not subject occupants to conditions which were dangerous, hazardous or detrimental to their life, health or safety, and able to provide the agreed upon premises, services and conditions."); *id.* at ¶ 282 ("Defendant violated its express and implied duties of habitability and merchantability **and** actual duties of habitability pursuant to the Pennsylvania Landlord Tenant Act of 1951 and the Lancaster Property Maintenance Code." (emphasis added)).

Lancaster Host's arguments in favor of dismissing the breach of implied warranty claims are limited to their relationship with the Code and the LTA. *See* Def.'s Br. at 7–8. As such, the court will not address the merits of Greenwald's implied warranty claims outside of their reference to the Code and LTA. Accordingly, while the court will dismiss Greenwald's breach of implied warranties claim, this dismissal will be limited to the extent that Greenwald relies on the Code or LTA to support its breach of implied warranty claim.

### 5. Greenwald's Breach of Implied Duty of Good Faith and Fair Dealing Claim

Lancaster Host has moved to have the court dismiss Greenwald's cause of action for breach of the implied duty of good faith and fair dealing in count III of the complaint. *See* Def.'s Br. at 8–9. It contends that the Pennsylvania Supreme Court has never recognized an independent cause of action for breach of the implied duty of good faith and fair dealing. *See id.* at 8 (citation omitted). It also argues that even if such an independent action existed, "the 'limited duty to perform a contract in good faith' would not apply when 'the parties in great detail set forth their mutual obligations and rights' in a written contract." *Id.* (quoting *Northview Motors, Inc. v. Chrysler*

*Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000)). Further, it points out that Greenwald's factual allegations supporting this cause of action are identical to those supporting its other causes of action, including its cause of action for breach of contract. *See id.* at 9 ("Thus, even if a cause of action for breaching the implied duty of good faith were to exist in Pennsylvania, it would not be viable in this case given the close nexus of common facts underlying all the Counts in this case – same parties, same contract, same Passover event, same transactions and occurrences, and the like." (citations omitted)).

Greenwald argues that the court should not dismiss its breach of implied duty of good faith and fair dealing claim because it sufficiently alleges that Lancaster Host did more than just breach the parties' Agreement. *See* Pl.'s Mem. at 12–13. It notes that Lancaster Host conducted a "systemic, wanton, [sic] campaign of bad faith and unfair representations" when it, *inter alia*, continuously assured Greenwald that "it could and would have the hotel premises fixed and completely and substantially prepared and ready for the event." *Id.* at 13 (citing Compl. at ¶¶ 50–75). Greenwald asserts that Lancaster Host's made these representations in bad faith, "even though they were not required to be made at all by the express terms of the contract, and do not constitute a breach of the contract." *Id.* Moreover, Lancaster Host "intended to trap [Greenwald] and make exercise of [Greenwald's right to pull out of the contract both unpredictable and impossible." (internal citations to complaint omitted)). Greenwald further points out that these representations occurred at different times than when Lancaster Host breached the Agreement once guests started arriving at the hotel; as such, the occurrences supporting the cause of action for breach of contract and breach of the implied duty of good faith and fair dealing are dissimilar. *See id.* at 14.

Contrary to Greenwald's assertion, Pennsylvania does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing in a case such as the instant case. In this regard,

> Pennsylvania courts have defined the duty of good faith and fair dealing as "[h]onesty in fact in the conduct or transaction concerned," and have held that "[w]here a duty of good faith arises, it arises under the law of contracts, not under the law of torts." *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) (internal quotation marks omitted). Moreover, under Pennsylvania law, a "claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008). Therefore, while Pennsylvania law generally recognizes a duty of good faith in the performance of contracts, this duty "does not create independent substantive rights." *Commonwealth v. BASF Corp.*, No. 3127, 2001 WL 1807788, at *12 (Pa. Com. Pl. Mar. 15, 2001); *see also JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002) ("[T]he implied covenant of good faith does not allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself." (emphasis in original)).

*Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013). Additionally,

> [c]ourts have utilized the good faith duty as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action, but that duty is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617–18 (3d Cir. 1995); *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 438 (3d Cir. 1993). Thus, a party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are "identical to" a claim for "relief under an established cause of action." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d at 701–02 (noting that Parkway's allegations concerning the closing of a garage in bad faith were identical to its allegations under 42 U.S.C. § 1983 and, therefore, there was no reason to imply a separate cause of action for breach of a duty of good faith); see also *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 970 (Pa. 1981) (court refused to recognize separate cause of action for breach of duty of good faith where adequate remedy was provided under Unfair Insurance Practices Act.); *Creeger Brick v. Mid–State Bank*, 560 A.2d at 154–55; *AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 373 Pa.Super. 572, 542 A.2d 90, 93–94 (Pa. Super. Ct. 1988), *aff'd. in part & rev'd on other grounds* 526 Pa. 110, 584 A.2d 915 (Pa.1990); *Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 344 Pa.Super. 367, 496 A.2d 840, 843 (Pa. Super. Ct. 1985) (court would not create a tort remedy

where there was an adequate remedy to address the claims in existing torts and contracts law).

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91–92 (3d Cir. 2000).

Even presuming that Greenwald has sufficiently alleged that Lancaster Host acted in bad faith, it "is not sufficient in itself to state an actionable claim under this theory." *Krekstein v. McDonald's Corp.*, 550 F. Supp. 3d 216, 220 (E.D. Pa. 2021) (citation omitted). To the extent that Pennsylvania courts have recognized an actionable claim for a breach of the duty of good faith, they have done so "in very narrow situations: specifically, relationship between franchisor and franchisee, insurer and insured, and (sometimes) employer and employee." *Id.* (quoting *Hordis v. Cabot Oil & Gas Corp.*, Civ. A. No. 3:19-CV-296, 2020 WL 2128968, at *4 (M.D. Pa. May 5, 2020)); *see also Northview Motors*, 227 F.3d at 91 (explaining that Pennsylvania "courts have recognized an independent cause of action for breach of a duty of good faith and fair dealing only in limited circumstances"). Greenwald does not cite to a Pennsylvania case recognizing a duty of good faith and fair dealing in the situation here, a catering company contracting with a resort to have yearly events at the resort, and this court is disinclined to extend the limited doctrine into a case such as this, especially considering that the parties entered into a comprehensive, lengthy agreement identifying their mutual obligations. *See Northview Motors*, 227 F.3d at 92 ("The covenant of good faith necessarily is vague and amorphous. Without such judicial limitations in its application, every plaintiff would have an incentive to include bad faith allegations in every contract action. If construed too broadly, the doctrine could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements. Therefore, we predict that the Pennsylvania Supreme Court would not extend the limited duty to perform a contract in good faith to a situation such as that presented here in which the parties in great detail set forth their

34

mutual obligations and rights in the [sales and service agreements].""). Accordingly, the court will dismiss with prejudice Greenwald's cause of action for breach of the implied covenant of good faith and fair dealing.

### 6.    Greenwald's Cause of Action for Unjust Enrichment

Lancaster Host also contends that the court should dismiss Greenwald's cause of action for unjust enrichment in count IV of the complaint. *See* Pl.'s Br. at 9–10. It explains that although Greenwald "meticulously details" every payment made to Lancaster Host for the 2019 Passover event, the exhibits it attaches to support these payments shows that Greenwald did not remit the payments. *Id.* at 9. Instead, a purported third-party, New York United Jewish Association Inc. d/b/a "Tomchei Shabbos of Marine Park," wrote the checks to Lancaster Host. *See id.* In addition, the invoices attached to the complaint were addressed to "New York United Jewish Association" and not Greenwald. *See id.* at 10. Based on these exhibits, Lancaster Host argues that Greenwald cannot maintain its unjust enrichment claim because Greenwald never conferred any benefit on Lancaster Host, and it has not alleged any relationship with the entity that apparently did. *See id.* Lancaster Host also appears to imply that Greenwald lacks standing to bring this claim. *See id.* (arguing that there is "nothing in the Complaint that explains . . . how Greenwald has standing to raise a claim on the Association's behalf . . .").

In its response to this part of Lancaster Host's motion, Greenwald does not dispute that the New York United Jewish Association wrote the checks and that those checks were tendered to satisfy Greenwald's performance under the Agreement. *See* Pl.'s Mem. at 15. Instead, it points out that, according to the terms of the Agreement, the Association was a member of the "Group" that rented the hotel and was responsible for payment. *See id.* (citing Agreement at p. 4). To the extent that Lancaster Host would want to investigate the relationship between Greenwald and the

Association, Greenwald argues that Lancaster Host can conduct this investigation during discovery. *See id.*

Greenwald also notes that if Lancaster Host was really contesting its standing to bring a cause of action for unjust enrichment, it did not file the proper motion. *See id.* at 15–16. More specifically, it explains that Lancaster Host filed its motion to dismiss only under Rule 12(b)(6) and not also under Rule 12(b)(1), which would have been the proper vehicle to challenge Greenwald's standing. *See id.* at 15–16 (citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)).

For its final argument in support of the court allowing it to process on its unjust enrichment claim, Greenwald contends that the allegations in the complaint show that it conferred a benefit on Lancaster Host. *See id.* at 16. Greenwald organized the event and brought the guests. *See id.* It "brought [Lancaster Host] the benefit of the event and the payments it received for the event, potential repeat guests, and publicity." *Id.* Greenwald asserts that these conferred benefits are more than sufficient to support a cognizable unjust enrichment claim.

The court disagrees with Greenwald that it has stated a plausible unjust enrichment claim in the complaint. Under Pennsylvania law, to establish a claim for unjust enrichment, a plaintiff must show, "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018) (quoting *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. 2017)). To succeed on an unjust enrichment claim, a plaintiff must show that circumstances exist that make it "'unconscionable' for the defendant to retain the benefit conferred." *Id.* (quoting *Robinson*, 171 A.3d at 817). A claim for unjust enrichment is "inapplicable

36

when the relationship between the parties is founded on a written agreement or express contract." *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (citation and internal quotation marks omitted). A plaintiff, however, may bring a claim for both unjust enrichment and breach of contract as claims in the alternative, even though it is legally impossible to recover under both. *Park v. Conn. Gen. Life Ins. Co.*, Civ. A. No. 06-4225, 2007 WL 9810908, at *4 (E.D. Pa. Mar. 9, 2007) (citation omitted).

"Unjust enrichment is typically involved in a question setting, when plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) (citation omitted). Unjust enrichment claims typically fall under one of two theories, "(1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud . . . ." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (citations omitted). Whereas an unjust enrichment claim under the quasi-contract theory may be brought in the alternative for a breach of contract claim, an unjust enrichment claim based on unlawful or improper conduct must be pled as a companion claim. *Id*. at 493. Therefore, a claim under the second theory rises and falls with the underlying claim. *Id*.

Here, Greenwald correctly points out that the New York United Jewish Association is included as part of the "Group" contracting with Lancaster Host in the Agreement. *See* Doc. No. 1-1 at ECF p. 2 ("NAME OF GROUP: New York United Jewish Association Inc., a New York non-for-profit corporation; Greenwald Caterers, Inc., a New Jersey business corporation."). In addition, the Association is identified as part of the Group entering into the Agreement with Lancaster Host. *See id.* ("**New York United Jewish Association Inc.** and **Greenwald Caterers**

Inc. (collectively, the "Group"), and **LANCASTER HOST, LLC** (the "Hotel") agree to the following contract establishing certain terms and conditions . . . ."). It also appears that the checks provided to Lancaster Host were issued from the Association's account. *See, e.g.*, Compl., Ex. K, Doc. No. 1-11.

Although Greenwald has asserted in its opposition brief that it conferred benefits upon Lancaster Host which go beyond the monies tendered for the 2019 Passover event, the complaint is structured in a manner that makes it appear that its unjust enrichment claim is solely based on Lancaster Host's retention of the funds paid to it for this event. *See* Compl. at ¶¶ 291–95. In fact, Greenwald specifically alleges that it would be "inequitable for [Lancaster Host] to be unjustly enriched based on receipt of funds and then putting upon [Greenwald] such a catastrophe." *Id.* at ¶ 295. While the court concurs with Greenwald that it could confer a benefit on Lancaster Host via means other than the tendering of monies, that is not what is pleaded in the complaint. Lancaster Host is entitled to know the allegations and claims it is facing and the complaint simply does not do that here.[13]

A fair reading of the complaint, even giving Greenwald all reasonable inferences in its favor, does not show that Greenwald is claiming that it conferred any benefit upon Lancaster Host beyond paying it money pursuant to the Agreement. With regard to the money that was paid, the exhibits attached to the complaint show that the Association, and not Greenwald, remitted the payments. The complaint does not include any allegations about the relationship between Greenwald and the Association which would allow Greenwald to seek the return of monies the Association paid to Lancaster Host. Lancaster Host should not have to wait until discovery to

---

[13] Rule 8 of the Federal Rules of Civil Procedure requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

obtain information about any relationship between Greenwald and the Association. At bottom, regardless of any potential issue with Greenwald's standing to pursue this claim, Greenwald cannot attempt to seek to recover money from Lancaster Host that it did not pay.[14] Accordingly, the court will dismiss without prejudice Greenwald's unjust enrichment claim.

### 7.    Greenwald's Causes of Action for Equitable and Promissory Estoppel

In count V of the complaint, Greenwald purports to assert causes of action for promissory and equitable estoppel. *See* Compl. at ¶¶ 296–301. Greenwald alleges that Lancaster Host "spoke misleading words and acted in a misleading way" causing Greenwald to "suffer[] damages directly as a result of [its] detrimental reliance on [Lancaster Host's] wrongful statements and actions as stated" in the complaint. *See id.* at ¶ 297. Greenwald also avers that it was damaged when Lancaster Host "made repeated assurances over the course of the months and weeks leading up to the Event about the condition, accessibility, cleanliness, staffing, standards, and habitability of the premises." *Id.* at ¶ 299. It therefore requests that Lancaster Host be estopped from arguing that Greenwald (1) "accepted the premises as they were by not cancelling the [Agreement]" and (2) "failed to exercise the cancellation clauses of the contract timely." *Id.* at 60.

Lancaster Host argues that the court should dismiss these causes of action because (1) there is no cause of action under Pennsylvania law for equitable estoppel, (2) Greenwald seeks to estop it from doing something that Greenwald has not actually alleged has occurred, *i.e.* asserting that it timely failed to exercise the cancellation clause in the Agreement, and (3) it could not locate any

---

[14] Regarding standing, challenges to a plaintiff's standing to bring a claim should be raised under Rule 12(b)(1). *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." (alteration in original) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007))). This court can raise issues concerning the court's subject-matter jurisdiction *sua sponte. See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.* 526 U.S. 574, 583 (1999) (explaining that courts have independent obligation to determine whether subject-matter jurisdiction exists, even in absence of challenge from any party).

case where a court entered an order, as part of a litigant prevailing on a promissory estoppel claim, limiting an opposing litigant's right to argue something. Def.'s Br. at 10–11.

In response, Greenwald disagrees with Lancaster Host's assertion that equitable estoppel is only a defense under Pennsylvania law, "but recognizes that in Pennsylvania, a cause of action for equitable estoppel is at times considered antiquated." Pl.'s Mem. at 16 (citing *Kreutzer v. Monterey Cnty. Herald Co.*, 757 A.2d 358, 361 (Pa. 2000)). Greenwald also asserts that it has alleged a valid claim for promissory estoppel because (1) Lancaster Host promised that the hotel and surrounding premises would be ready in time for the Passover event, (2) this promise caused Greenwald to not cancel the contract, and (3) injustice can only be avoided by enforcing that promise. *See id.* at 17. It therefore seeks a court order that

> [Lancaster Host] cannot argue or claim that [Greenwald] is unable to exercise the option to hold the event for subsequent years because [Greenwald] failed to exercise the option in 2020 (in the aftermath of the horrific 2019 event), and the Complaint also seeks to enforce [Lancaster Host]'s assurances and promise to comply with Wyndham and habitability standards, and compliance with the future options clause and make sure the Hotel is up to the proper standards for the future Passover events.

*Id.*

The court will first address Greenwald's equitable estoppel claim. While Greenwald seems to be inviting this court to recognize a new (or, at least, updated) cause of action under Pennsylvania law, this court declines to do so. Equitable estoppel is

> "[a] doctrine sounding in equity, [which] recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills v. Siskind*, 457 A.2d 502, 503 (Pa. 1983) (citations omitted). Nevertheless, "[e]quitable estoppel is not a separate cause of action. It may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citation omitted); *see also Com., Dep't of Pub. Welfare v. Sch. Dist. of Philadelphia*, 410 A.2d 1311, 1314 (Pa. Commw. 1980) ("an estoppel does not create a cause of action at law and, unless a plaintiff can first show a cause of

action, estoppel will not supply one for him"); *Zamos v. McNeil-PPC, Inc.*, 2017
WL 68577, at *6 (E.D. Pa. Jan. 5, 2017) (dismissing claim because plaintiff "cannot
bring an equitable estoppel claim as an independent cause of action").

*Siegel v. Goldstein*, Civ. A. No. 19-2890, 2020 WL 7240451, at *10 (E.D. Pa. Dec. 9, 2020) (third

alteration in original). "[E]quitable estoppel is *only* 'a defense used to preclude a person from

denying or asserting a claim." *Id.* (quoting *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 424

n.36 (E.D. Pa. 2019)).

As neither the Supreme Court of Pennsylvania nor the Third Circuit Court of Appeals has

recognized equitable estoppel as an independent cause of action, the court finds that Greenwald

has failed to state a claim for relief.[15] Turning to Greenwald's cause of action for promissory

estoppel, this doctrine

> allows the court to enforce a party's promise that is unsupported by consideration
> where (1) the promisor makes a promise that he reasonably expects to induce action
> or forbearance by the promisee, (2) the promise does induce action or forbearance
> by the promisee, (3) and injustice can only be avoided by enforcing the promise.
> *Cardmone v. Univ. of Pittsburgh*, 253 Pa.Super. 65, 74, 384 A.2d 1228, 1233.

---

[15] Greenwald asserts that this court should follow New York state courts in recognizing an independent cause of action for equitable estoppel. *See* Pl.'s Mem. at 17 (citations omitted). Yet, the case Greenwald cites which purportedly recognized an independent cause of action for equitable estoppel, *757 3d Ave. Associates, LLC v. Patel*, 117 A.D.3d 451 (N.Y App. Div. 2014), does not appear to have recognized such an independent cause of action. Instead, the defendant tenant in that case invoked **the defense** of equitable estoppel. *See Patel*, 117 A.D.3d at 452–53 (explaining that defendant tenant "interposed an answer asserting several **affirmative defenses**, including . . . that landlord was equitably estopped from terminating the tenancy" (emphasis added)). The parties had filed cross-motions for summary judgment, and the "motion court" determined that the plaintiff landlord "was estopped from arguing" that the defendant "had agreed to vacate the premises during the license period in exchange for [the] landlord's promise not to terminate the lease any sooner than the expiration" of a certain period. *Id.* at 453. The motion court therefore denied the landlord's motion for summary judgment, granted the tenant's cross-motion for summary judgment, and dismissed the complaint. *See id.* (describing motion court's order).

On appeal, the Appellate Division set forth the requirements for a "party invoking a **defense** of equitable estoppel, and then analyzed whether the defense applied. *See id.* at 453–54 (emphasis added). The Appellate Division affirmed the dismissal of the complaint. *See id.* at 451, 455.

As far as this court can discern, the Appellate Division never recognized an independent cause of action for equitable estoppel. In fact, it could not have done so, as the motion court had granted the tenant's motion for summary judgment and dismissed the complaint. Equitable estoppel was only used as a defense to the causes of action in the complaint.

The court also notes that despite Greenwald's protestation that New York recognizes equitable estoppel as an independent cause of action, it appears that this is still up for debate. *See, e.g.*, *Capstone Asset Mgmt. Co., Ltd. v. Dearborn Capital Group LLC*, No. 21cv997 (DLC), 2021 WL 4250087, at *8 (S.D.N.Y. Sept. 17, 2021) ("The defendants are correct that equitable estoppel does not constitute an independent cause of action under New York law.").

> (1978). Generally, this doctrine is invoked in situations where the formal
> requirements of contract formation have not been satisfied and where justice would
> be served by enforcing a promise. *Cardmone*, 253 Pa.Super. at 74, n. 9, 384 A.2d
> at 1233, n. 9 ("Promissory estoppel has been characterized as a substitute for
> consideration, an exception to the ordinary contract requirements, or even as a
> 'species of consideration'") (quoting *Fried v. Fisher*, 328 Pa. 497, 501, 196 A. 39,
> 42, n. 5 (1938)).

*Carlson v. Arnot-Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

Here, Lancaster Host seemingly does not state that Greenwald has failed to state a claim for promissory estoppel; instead, it is apparently only challenging the relief being sought. *See* Def.'s Br. at 11. Nonetheless, there appears to be a fundamental problem with Greenwald's allegations. A cause of action for promissory estoppel seeks to enforce a promise. As evidenced by Greenwald's requests for relief, there is no promise by Lancaster Host that Greenwald is seeking to enforce here. Instead, it is attempting to prohibit Lancaster Host from asserting certain arguments in this case (and possibly certain affirmative defenses). Greenwald has not identified any case or principle of law that would permit it to proceed in this fashion. Accordingly, the court will also dismiss without prejudice Greenwald's promissory estoppel claim.

### 8. Greenwald's Cause of Action for a Declaratory Judgment in Count VII of the Complaint

Count VII of the complaint relates to a part of the Agreement apportioning responsibility to the Group or a Group member for the "cost of any damage or repairs to a guest room" or any "out of the ordinary alteration and clean up." Compl. at ¶ 306. Greenwald claims that Lancaster Host's breaches of the Agreement and any warranties caused any possible damage, repairs, out-of-the-ordinary alteration, or clean-up. *See id.* at ¶¶ 307–10, 312. Greenwald also asserts that, to the extent Lancaster Host would allege that there was any damage, repairs, out-of-the-ordinary alteration, or clean-up, it forfeited such a claim through its conduct and when it did not deduct any

such costs from Greenwald's $30,000 deposit pursuant to the Agreement. *See id.* at ¶ 311. Based on these allegations, among others, Greenwald

> requests declaratory judgment against [Lancaster Host] imposing liability for any and all alleged damage, repairs, alterations or clean-up related to Passover 2019 upon [Lancaster Host] and none whatsoever upon [Greenwald] or any Group member, and imposing liability for any and all breaches, failures, distress, injuries, or other damages to Group members and none upon [Greenwald] or any Group member, declaring any [Lancaster Host] claims waived, and any other relief the Court deems just and proper.

*Id.* at 62.

Lancaster Host argues that the court should dismiss this declaratory judgment claim because Greenwald is attempting to impose liability upon Lancaster Host and "declaratory judgments 'are not meant simply to proclaim that one party is liable to another." Def.'s Br. at 11, 12 (quoting *Butta v. Geico Cas. Co.*, 400 F. Supp. 3d 225, 234–35 (E.D. Pa. 2019)). In addition, Lancaster Host believes that this declaratory judgment claim is duplicative of Greenwald's breach of contract claim, which also attempts to hold Lancaster Host liable for damages. *See id.* at 12. Lancaster Host also points out that the factfinder will ultimately have to determine whether it is liable to Greenwald and, if so, the amount of damages. *See id.* It asserts that this "dispute . . . must be tried, [and] not resolved in a declaratory judgment action." *Id.*

In response, Greenwald contends that Lancaster Host has oversimplified its declaratory judgment claim, as its request is "more complicated" than simply seeking to impose liability upon Lancaster Host. Pl.'s Mem. at 18. Instead of seeking to impose liability on Lancaster Host, it is seeking a declaration that Lancaster Host, and not Greenwald, is liable for damages suffered by Greenwald's guests.[16] *See id.* at 19. Such a declaration is outside of the breach of contract claim

---

[16] Greenwald states that it has pleaded that some guests suffered damages during the 2019 Passover event due to Lancaster Host's breaches. *See* Pl.'s Mem. at 19 (citing Compl. at ¶¶ 51, 283, 284). It alleged that one guest whose child was injured on an exposed nail, *see id.* (citing Compl. at ¶ 146), and it believes that this family intends to sue or has already initiated a suit against it. *See id.*

which only seeks an award of damages for Greenwald. *See id.* Further, Greenwald believes that it would be within the court's discretion to issue a declaratory judgment. *See id.* at 20.

The court agrees with Greenwald that its declaratory judgment claim, at least at this early stage, should be permitted to move forward. Under the Declaratory Judgment Act,

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). A plaintiff may seek a declaratory judgment even when another adequate remedy exists. *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). Nonetheless, "declaratory judgments [must] 'have utility' and 'be of significant practical help in ending the controversy.'" *Butta v. Geico Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019) (quoting *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995) and *Step-Saver Data Sys. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990)). Also, district courts should "exercise their discretion to decline proceeding with declaratory judgments when they duplicate other claims." *Id.* (citing *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000)).

Here, contrary to Lancaster Host's argument, Greenwald's declaratory judgment claim in count VII of the complaint, while somewhat unclear, does not appear to be strictly duplicative of its breach of contract claim in count I of the complaint. It does not seek a judgment declaring that Lancaster Host is liable to Greenwald; instead, it appears to be seeking a judicial determination of the responsible party for damages, repairs, alterations, clean-up, or damages to group members. Regardless, the precise contours of this claim can be fleshed out through discovery. If the claim is truly improper or redundant, Lancaster Host can raise these issues through a motion for summary

judgment. Therefore, the court will deny Lancaster Host's motion to dismiss the declaratory judgment claim in count VII of the complaint.

**9.      Greenwald's Cause of Action for Indemnification in Count VIII of the Complaint**

In count VIII of the complaint, which sounds in "Common Law and Implied Indemnification," Greenwald seeks to require Lancaster Host to indemnify it for "any and all costs expenses, losses, or damages incurred by [Greenwald] as a result of [Lancaster Host's] breaches, failures, distress, injuries, or other damages." Compl. at 63. Lancaster Host has moved to have the court dismiss this count, first arguing that it could not locate an implied indemnification doctrine in Pennsylvania. *See* Def.'s Br. at 13. Lancaster Host also contends that there are no allegations in the complaint which detail a secondary liability relationship between the parties that would permit Greenwald to seek indemnification; rather, the complaint describes an arms-length contractual relationship. *See id.* at 14.  In addition, Lancaster Host points out that there are no allegations that Greenwald had to pay damages due to the negligence of Lancaster Host or even that a third-party has brought a tort claim against Greenwald relating to Lancaster Host's conduct. *See id.* at 15.

In response to Lancaster Host's motion, Greenwald asserts that it has alleged that there were numerous issues with the Resort and that it took steps to mitigate those issues, including paying for some guests to stay at a different hotel. *See* Pl.'s Mem. at 21–22. Greenwald argues that its common law indemnification claim would only possibly be precluded to the extent that it would seek damages based on a breach of the Agreement. *See id.* at 22. Since it is not "exactly claim[ing]" that the contract requires payment of monies Greenwald expended to remedy Lancaster Host's failures, it can proceed with its indemnification claim. *See id.*

After reviewing the complaint, the court is concerned with this particular claim because it does not appear to be a proper common law indemnification claim. In general,

> "[u]nder Pennsylvania law, indemnity is available only (1) 'where there is an express contract to indemnify,' or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000) (quoting *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F.Supp. 979, 989 (E.D. Pa. 1993)). If there is no express contract to indemnify, then the party seeking indemnity must rely on the second option—common law indemnification. *Id.* Common law indemnification is appropriate when a defendant's liability "arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party." *Morris v. Lenihan*, 192 F.R.D. 484, 489 (E.D. Pa. 2000). The common law right of indemnity "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Id.* at 488 (quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951)) (emphasis in original).

*Bank v. City of Philadelphia*, 991 F. Supp. 2d 523, 530 (E.D. Pa. 2014) (internal footnote omitted). Importantly, "before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment . . . is premature." *F. J. Schindler Equip. Co. v. Raymond Co.*, 418 A.2d 533, 534 (Pa. Super. 1980).

Here, Greenwald is attempting to pursue a common law indemnification claim based on monies it had to expend to remedy or mitigate against the breaches by Lancaster Host. At no point in the complaint does it allege that it had to pay "damages" to a third party. Greenwald has not alleged that any claims were filed against it and that any monies paid thus far were to resolve those claims. Accordingly, it has not pleaded a plausible claim for common law indemnification and the court will dismiss this claim.[17]

---

[17] Greenwald claims that it is entitled to incidental and consequential damages as part of its breach of contract claim. *See* Compl. at p. 56. It also alleges that the breach of the Agreement resulted in "excessive costs." *Id.* Thus, it would seem quite possible that Greenwald, if it prevails in this litigation, could seek to recover monies that it had to expend in essentially covering for Lancaster Host's breaches as damages for its breach of contract claim.

As for any implied indemnification claim, the court is unaware of and could not locate any case recognizing a cause of action for implied indemnification. Greenwald has not identified any case recognizing such a cause of action in its brief. Therefore, the court will also dismiss with prejudice Greenwald's cause of action for implied indemnification. *See Allegheny Gen. Hosp.,* 228 F.3d at 448 (explaining that Pennsylvania law provides for indemnity only by contract or "where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." (citation and internal quotation marks omitted)).

### III.    CONCLUSION

For the reasons discussed above, the court will grant in part and deny in part the motion to dismiss. The court will grant the motion and (1) strike with prejudice (a) the claims for punitive damages and (b) any requests for damages based on violations of the municipal property maintenance code, (2) strike without prejudice the requests for specific performance, (3) dismiss with prejudice the breach of implied warranties claims only insofar as they are based on the Code or the LTA, (4) dismiss without prejudice the claims for (a) breach of express warranty, (b) unjust enrichment, (c) promissory estoppel, and (d) common law indemnification, and (5) dismiss with prejudice the claims for (a) breach of implied duty of good faith and fair dealing, (b) equitable estoppel, and (c) implied indemnification. In all other respects the court will deny the motion to dismiss. The court will give Greenwald leave to file an amended complaint to the extent it desires to and can replead the claims and requests for relief the court is dismissing and striking without prejudice.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.