IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENWALD CATERERS INC., | : | CIVIL ACTION |
| NEW YORK UNITED JEWISH | : | |
| ASSOCIATION, INC. | : | |
| | : | |
| v. | : | NO.  22-811 |
| | : | |
| LANCASTER HOST, LLC d/b/a | : | |
| WYNDHAM RESORT LANCASTER | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                    April 26, 2023

### I.     Introduction

This case is about a catering company and a hotel.  The two once had a productive business relationship.  For years, the catering company held annual Passover events for the Orthodox Jewish Community at the hotel without incident.  In 2018, amidst renovations at the hotel, the parties negotiated a contract providing for future annual Passover events.  They executed the contract in time for a 2019 Passover event.  The catering company claims that when it arrived for this event with its guests and associates, the hotel was wholly unprepared to host them.  The catering company maintains several claims against the hotel in connection with the fateful 2019 Passover event, including a claim for breach of various warranties that it defines as "implied" in their relationship.

The hotel moves for judgment on the pleadings on the catering company's implied warranties claim because it has failed to identify any applicable implied warranty.  We grant the hotel's motion for two reasons.  First, there is no indication that the implied warranty of habitability applies to hotels in situations like this under Pennsylvania law.  Second, the catering company has not identified any other applicable implied warranty.  This case will continue, but it

will do so with a central focus on the alleged breach of contract.

## II. Factual Allegations

Judge Smith's April 22, 2022 opinion effectively introduces this case and sets the stage for our decision. *See* DI 13. Below we summarize certain allegations of particular relevance here. Plaintiff Greenwald Caterers, Inc. ("Greenwald") "is a high-end caterer who has for decades served the needs of the Orthodox Jewish Community," "has been involved in organizing hotel programs and [K]osher tours around the world for over thirty years," and "specializes in custom [K]osher celebrations." DI 15 ¶ 1. Defendant Lancaster Host, LLC d/b/a Wyndham Resort Lancaster ("the Host") owns and runs a hotel formerly known as the Lancaster Host Resort located in Lancaster County, Pennsylvania. *Id.* ¶ 4. Greenwald has held an annual Passover event at the Host since 2008. *Id.* ¶ 4. Plaintiff New York United Jewish Association, Inc. ("Association") "is a not-for-profit entity that collaborated [on the 2019 Passover event] with Greenwald" by paying for its members to attend.[1]

In 2018, the Host became a Wyndham franchisee and rebranded as the Wyndham Lancaster Resort & Convention Center. *Id.* ¶ 10. As part of the rebrand, the Host underwent renovations to meet Wyndham "resort standards."[2] *Id.* ¶ 11. Amidst renovations in late 2018, Greenwald and the Host negotiated a five-year contract (the "contract") for future Passover

---

[1] DI 15 ¶¶ 2, 3, 38. We refer to Greenwald and Association together as "plaintiffs."

[2] According to plaintiffs, "Wyndham standards include and are not limited to 'features that you would expect in a world class hotel, including beautifully appointed lounge areas, smartly detailed guest rooms, distinctive dining options, and well-designed meeting spaces' . . . . 'Wyndham offers thoughtful versatility . . . in destinations around the word. Both business and leisure travelers know they can trust the Wyndham name. That trust, combined with a strong reputation, makes Wyndham a powerful upscale option.'" DI 15 ¶¶ 16-17.

events "at what was to be the newly renovated Wyndham hotel." *Id.* ¶¶ 7, 8, 11.  The contract covered annual Passover events at the Host through 2023 and "included many clauses intended to satisfy the needs, requirements, concerns, desires, etc.," of Greenwald and its attendees.  *Id.* ¶ 50.  Among other things, the contract provided for: Greenwald's exclusive use of the entire hotel except for select common areas, clean common bathrooms, daily housekeeping, linen rentals, linen cleaning, linen changes, room phones, Wi-Fi internet, pre-event room inspections, and Kosher preparations of kitchen facilities and guest rooms.  *Id.*

The Host repeatedly assured Greenwald that it would be ready for the April 2019 Passover event in the months and weeks leading up to the holiday.  *Id.* ¶¶ 11, 54, 79, 80, 81.  But when Greenwald and the 2019 Passover attendees arrived for the event, they discovered the Host in "disarray."  *Id.* ¶ 96.  Among other things, attendees encountered in their rooms: cat crates, cat litter, a "deeply inundating" smell of cat waste, plumbing issues, lack of water, sewage backups, mouse droppings, cockroaches, vermin, exposed nails, uncovered electrical outlets, mold, exposed lead paint, construction dust, non-functioning air conditioning, unmade beds, misplaced or missing furniture and beds, missing cots, missing doors, non-Kosher cooking utensils and cooking equipment, and inoperable telephones.  *Id.*  Families who had requested adjoining rooms or blocks of rooms were separated.  *Id.* ¶ 100.  Others found themselves assigned to rooms in the middle of other family blocks.  *Id.*  The Host provided infrequent and insufficient housekeeping.  *Id.* ¶ 129.  Attendees who complained to the front desk were "rudely" rebuffed.  *Id.* ¶ 102.

Problems plagued the event beyond the attendees' rooms.  To Greenwald's "dismay[]," the kitchen facilities were unfinished and did not meet the Kosher specifications set forth in the contract.  *Id.* ¶ 109.  The dining linens were "wrinkled" and "malformed," and the Host's laundry and press facilities were "not operational."  *Id.* ¶¶ 113, 114.  Throughout the building, "ceiling

3

tiles were missing" and "electrical wires were exposed." *Id.* ¶ 116.  Construction debris and equipment littered the premises.  *Id.*  Various spaces reserved for Greenwald's use in the contract were unfinished or unusable.  *Id.*  The Host did not have a "functioning Sabbath elevator . . . until the middle of the program," though the contract called for one.  *Id.* ¶ 120.

To "make the best" of the "nightmare" at the Host, Greenwald had to hire extra staff for the duration of the event, place some guests at a neighboring hotel, provide free food to guests, secure generators and fuel, rent new linens, and "build[] a kitchen facility outside of the hotel" at its own cost.  *Id.* ¶¶ 14, 94, 105, 107, 111, 112, 113.

To recover its alleged damages from the 2019 Passover event, which left attendees "disappointed, disgusted, and insulted," Greenwald brought this suit in March of 2022.  *Id.* ¶ 146; *see* DI 1.

### III. Procedural Background

On March 4, 2022, Greenwald filed a complaint against the Host alleging contract, warranty, and equitable claims.  DI 1.  In its complaint, Greenwald claimed breaches of various warranties characterized as "implied," including the "duties of habitability pursuant to the Pennsylvania Landlord Tenant Act of 1951 and the Lancaster Property Maintenance Code."  *Id.* at 57.  On April 22, 2022, Judge Smith dismissed several of Greenwald's claims, including the portion of its implied warranties claim relying on the Pennsylvania Landlord Tenant Act of 1951 and the Lancaster Property Maintenance Code.  DI 13 at 30.  The Host did not attack Greenwald's claim for breaches of the "implied warranty of habitability generally as well as implied warranties that the hotel would conform to industry or Wyndham standards," so Judge Smith limited his ruling accordingly.  *Id.* at 30-31.

On May 6, 2022, Greenwald filed an amended complaint raising nearly identical claims

4

and adding Association as a plaintiff.  DI 15.  On May 17, 2022, the Host moved again to dismiss pieces of plaintiffs' amended complaint, including the implied warranty of habitability portion of their implied warranties claim.  DI 16-2 at 13.  Specifically, the Host argued that Pennsylvania does not recognize an implied warranty of habitability running from hotels to guests, let alone to caterers.  *Id.*  On June 29, 2022, Judge Smith granted in part and denied in part the Host's motion.  DI 27.  Judge Smith declined to dismiss plaintiffs' implied warranties claim, though he did so without prejudice and without addressing the merits of the Host's argument.  DI 27 at 3.

    IV.    **The Host's Motion for Judgment on the Pleadings**

On February 22, 2023, the Host filed the instant motion for judgment on the pleadings seeking dismissal of the remainder of plaintiffs' implied warranties claim.  DI 72.  The Host reasserts that under Pennsylvania law, the implied warranty of habitability does not apply to hotels.  DI 79 at 4.  The Host further argues that plaintiffs fail to state a claim for breach of any other implied warranty recognized in Pennsylvania.  *Id.*

Plaintiffs advance a medley of counterarguments.  First, plaintiffs argue that the Host's motion is precluded by prior rulings on its motions to dismiss.  DI 77 at 8.  Second, plaintiffs argue that common law duties of care owed by hotels to guests function here as implied warranties owed by the Host.  DI 77 at 9.  Third, plaintiffs argue that Pennsylvania's implied warranty of habitability covers hotels.  *Id.* at 13.  Finally, plaintiffs argue that certain terms of the contract, together with the parties' expectations and prior dealings, created implied warranties.  *Id.* at 14.

The Host counters that prior rulings do not foreclose its motion.  DI 79 at 1.  The Host further disagrees that tort or other common law duties are implied warranties, that the implied

warranty of habitability applies to hotels, or that contract provisions create implied warranties. *Id.* at 4. The Host contends that we must dismiss plaintiffs' implied warranties claim because it has "no legal source, no known elements, and no defined scope." *Id.* at 7.

We heard oral argument by the parties on March 13, 2023. DI 78. The Host's motion is thus ripe for disposition. For the reasons discussed below, we will dismiss plaintiffs' claim for breach of implied warranties with prejudice.

V.     **Standard of Review**

We analyze the Host's motion for judgment on the pleadings according to the standards governing motions to dismiss under to Federal Rule of Civil Procedure 12(b)(6). *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (citation omitted) ("A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.").

Therefore, to survive the Host's motion, plaintiffs' amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Deciding whether a complaint is facially plausible is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

"Assessing plausibility under *Twombly* and *Iqbal* is a three-step process." *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 661 (E.D. Pa. 2021). "The first step in that process

requires an articulation of the elements of the claim." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). The second step requires that we "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). We must not extend the presumption of truth to plaintiffs' allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 790 (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). Finally, we must assume the veracity of plaintiffs' well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *McDermid*, 520 F. Supp. 3d at 661 (quoting *Connelly*, 809 F.3d at 787).

## VI. Analysis

### A. The Host's motion is not foreclosed by previous rulings.

Plaintiffs argue that the Host's motion is barred because Judge Smith "has already found that [p]laintiffs sufficiently alleged a violation of one particular implied warranty – that of habitability." DI 77 at 9. We disagree. First, the prior rulings on the Host's motions to dismiss did not address its argument that the implied warranty of habitability does not apply to hotels. Second, Judge Smith specifically provided for the Host's reassertion of that argument. DI 27 at 3 ("[i]n all other respects, the motion to dismiss is denied without prejudice to the defendant re-raising its arguments"). Third, plaintiffs' claim invokes purported implied warranties beyond habitability, and the Host's instant motion advances new arguments in kind. DI 79 at 3. Fourth, the record is considerably more developed since the time of Judge Smith's decisions, and plaintiffs have had ample opportunity to hone the theory of their case. Finally, we are not bound by prior rulings on the Host's motions to dismiss. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Our independent analysis below governs the disposition of

the Host's motion. *Id.*

### B. Plaintiffs do not state a claim for breach of implied warranties because they do not identify any applicable implied warranties.

Implied warranties are obligations imposed by law based on the circumstances of a transaction as opposed to a seller's promises or representations. *Implied Warranty*, *Black's Law Dictionary* at 1903 (11th ed. 2019). Courts recognize a finite number of implied warranties and typically do not enforce them beyond the specific contexts in which they apply.[3] Further, courts generally disfavor implied warranties and construe them narrowly. *Rhone Poulenc Rorer Pharms. v. Newman Glass Works*, 112 F.3d 695, 697 (3d Cir. 1997).

Here, plaintiffs invoke the implied warranty of habitability but fail to show that it applies to hotels in Pennsylvania. Plaintiffs' remaining arguments fare no better because they do not invoke additional implied warranties, but rather describe tort, contract, or other legal sources of the Host's alleged obligations.

### i. Plaintiffs do not show that the implied warranty of habitability applies to hotels.

The parties do not dispute that Pennsylvania law governs here. *See* DI 1-1 at 15 ("Any and all disputes arising from or relating to this contract will be governed by Pennsylvania law,

---

[3] *See, e.g.*, *Black's*, *supra*, at 1903 (recognizing and defining various implied warranties). In the sale of goods context, Pennsylvania recognizes the statutorily defined implied warranties of merchantability and fitness for a particular purpose. *Crestwood Membranes, Inc. v. Constant Servs.*, 2017 WL 1088089, at *16-17 (E.D. Pa. March 22, 2017) (citing 13 Pa. C.S.A. §§ 2314, 2315). In the construction and repair context, Pennsylvania recognizes the implied warranty that services will be performed in a reasonable and workmanlike manner. *First Nonprofit Ins. Co. v. Meenan Oil LLC*, 462 F. Supp. 3d 537, 547 (E.D. Pa. 2020) (collecting cases). In the residential context, Pennsylvania recognizes the implied warranty of habitability, *see infra*.

without regard to choice or conflict of law principles."); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) ("[a] federal court sitting in diversity must apply state substantive law"). Pennsylvania courts impose an implied warranty of habitability on residential lease agreements. *Echeverria v. Holley*, 142 A.3d 29, 34 (Pa. Super. Ct. 2016). The implied warranty of habitability requires landlords to provide "facilities and services vital to the life, health, and safety of [] tenant[s] and to the use of the premises for residential purposes" without regard for bargained terms in a lease. *Id.* (internal quotations omitted) (quoting *Pugh v. Homes*, 405 A.2d 897 (Pa. 1979)). To assert a claim for breach of the implied warranty of habitability, tenants must first afford landlords notice of a defect in habitability together with reasonable opportunity for repair. *Id.* Plaintiffs argue that this implied warranty of habitability applies to hotels, but do not cite any controlling authority on that point. Plaintiffs therefore urge us to recognize an expansion of the existing implied warranty of habitability in Pennsylvania.[4]

Pennsylvania courts have recognized limited expansions of the implied warranty of habitability before, though not beyond the residential context. *Conway v. Cutler Grp., Inc.*, 99 A.3d 67 (Pa. 2014) (recognizing an implied warranty of habitability running from new home builders to original purchasers); *Am. Multi-Cinema, Inc. v. Posel Enters.*, 1992 WL 328891, at *22 (E.D. Pa. Oct. 27, 1992) (citing *Pawco, Inc. v. Bergman Knitting Mills, Inc.*, 424 A.2d 891, 895 (Pa. Super. Ct. 1980)). Though hotels fall outside the residential context, plaintiffs argue that claims for breach of the implied warranty of habitability against hotels are nevertheless

---

[4] Where there is no authoritative decision by a state's highest court on a novel issue, we must predict how the state's highest court would decide the issue. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). Our role in such an instance "is not to form or create state law but to decide the case as [we believe] it would have been decided by the state's highest court." *State Farm Mut. Auto. Ins. Co. v. Armstrong*, 949 F.2d 99, 101 (3d Cir. 1991).

"legion across the country." DI 77 at 11. Upon investigation, such cases are few in this Circuit[5] or elsewhere, and several courts faced with the same proposed expansion have rejected it. *See, e.g.*, *James v. Harrah's Resort Atl. City*, 2016 WL 7408845, at *23 (D.N.J. Dec. 22, 2016) (denying hotel guest's motion for summary judgment on claim for breach of implied warranty of habitability because "[n]o New Jersey court has recognized an action for breach of the implied warranty of habitability by a hotel guest"); *Licari v. Best W. Int'l, Inc.*, 2013 WL 3716523, at *15-16 (C.D. Ut. July 12, 2013) ("Utah state law does not recognize a cause of action for an implied warranty of habitability for hotel rooms."). Lacking authority supportive of plaintiff's position and guided by the principle that courts generally disfavor implied warranties and construe them narrowly, *Rhone* 112 F.3d at 697, we decline to predict that Pennsylvania's Supreme Court would expand the implied warranty of habitability by imposing it on a commercial relationship between a hotel and high-end caterer that stems from a negotiated, written contract.

        ii.    <u>Obligations imposed on the Host by common law or the contract itself are not implied warranties under which plaintiffs' claim may proceed.</u>

Plaintiffs next turn to cases articulating common law obligations owed by hotels to guests, referring to these obligations as both "implied duties" and "implied warranties."[6] Plaintiffs' labels notwithstanding, these obligations are not cognizable implied warranties under

---

[5] We are aware of only one court in this Circuit to contemplate a claim for breach of implied warranty of habitability against a hotel under Pennsylvania law; it did not decide whether the claim was viable. *See generally Cerreta v. Red Roof Inns, Inc.*, 2016 WL 4611689 (M.D. Pa. Sept. 6, 2016).

[6] DI 77 at 9 ("A hotel owner does have duties imposed by law to its guests. These obligations are not, or at least historically were not, imposed by the legislature, as [the Host] pretends. Instead, they are implied warranties.").

which their claim can proceed.  Three of plaintiffs' cited cases concern hotel duties in the tort personal injury context.  *Altamuro v. Milner Hotel, Inc.*, 540 F. Supp. 870 (E.D. Pa. 1982) (wrongful death case); *Cross v. Laboda*, 152 A.2d 792 (Pa. Super. Ct. 1959) (fall case); *Fucci v. Sommers*, 41 Pa. D. & C.2d 30 (Monroe Cty. Ct. Com. Pl. 1963) (hazardous condition case). Three other cases concern miscellaneous hotel duties inapposite here.  *Nicholaides v. Univ. Hotel Assocs.*, 568 A.2d 219 (Pa. Super. Ct. 1990) (duty to safeguard guests and their property from robbery and theft); *Buck v. Hankin*, 269 A.2d 344 (Pa. Super. Ct. 1970) (same); *Nelson v. Boldt*, 180 F. 779 (Cir. Ct. E.D. Pa. 1910) (duty to provide reputable guests shelter).  Another case references the implied warranty of fitness for human consumption in the context of a food sale, likewise irrelevant here.  *Commonwealth v. Penn-Harris Hotel Co.*, 21 Pa. D. & C. 460 (Dauphin Cty. Ct. Com. Pl. 1934).  And finally, plaintiffs cite *O'Connor v. Sandy Lane Hotel Co.* for the proposition that all service contracts contain an "implied promise" of due care.  496 F.3d 312, 323 (3d Cir. 2007).  However, *O'Connor* does not analyze whether any implied warranty runs against hotels to guests.  It merely notes, in the context of a personal jurisdiction analysis, that the familiar negligence standard of care attaches to service contracts.  *O'Connor*, 496 F.3d at 324 (citing *St. Clair v. B&L Paving Co.*, 411 A.2d 525, 526 (Pa. Super. Ct. 1979)) ("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a 'social' duty imposed by the law to act without negligence.").

Plaintiffs' authority might support tort or other types of claims against hotels.  But here, we must focus on the Host's challenge to plaintiffs' implied warranties claim.  And we decline plaintiffs' invitation to create an implied warranty derived from the tort duties they identify.  *See, e.g.*, *Echeverria v. Holley*, 142 A.3d 29, 35 (Pa. Super. Ct. 2016) ("a breach of the implied warranty of habitability represents a contract claim for which only contract remedies are

11

available and not a tort claim for which personal injury damages are available"); *see also Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008) (citing *eToll Inc. v. Elias/Savion Advert. Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)) (noting the "conceptual distinction" between contract and tort claims).

Plaintiffs next argue that terms in the contract, together with the expectations and prior dealings of the parties, gave rise to implied warranties that the Host would conform to "its own standards" and "Wyndham Standards." DI 77 at 14-15. Plaintiffs cite a clause in the contract contemplating the Host's status as a future franchisee[7] and to the parties' "years of mutual experience hosting Passover events." *Id.* at 15. Accordingly, "they all understood that the [h]otel would be upgraded and held to higher Wyndham Standards as a Wyndham franchisee. Those Wyndham Standards, therefore, were implied terms of the [a]greement." *Id.*

This exercise of interpreting the text of the contract in light of the parties' expectations does not reveal implied warranties. It is contract interpretation.[8] Plaintiffs plainly state as much. DI 77 at 12 ("Circumstances impact the scope of implied promises: all contractual obligations must be reasonably interpreted, after all."). And the terms of a contract, whatever their meaning, cannot create implied warranties. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 911-12 (M.D. Pa. 2019) ("An implied warranty is not literally a 'contractual' warranty because it is not incorporated into the formal agreement of the parties and is not a basis of the bargain. The

---

[7] DI 77 at 14 ("[t]he [a]greement specified that plaintiffs' expectations 'shall be subject to change based on the terms and conditions imposed by the franchisor'"); DI 1-1 at 15 ("The Hotel is planning to obtain a franchise. If that occurs at any time while this contract is in effect, the terms of the contract shall be subject to change based on terms and conditions imposed by the franchisor.").

[8] *See, e.g.*, *Frigaliment Importing Co. v. B. N. S. Int'l Sales Corp.*, 190 F. Supp. 116 (S.D. N.Y. 1960) (considering the text of a parties' commercial contract, their expectations, and industry standards to determine the meaning of "chicken").

12

implied warranty arises *independent* of the [] contract . . . . this warranty does not emerge from the negotiated terms of the contract, just the business relationship between the parties") (citations omitted) (emphasis added).  Plaintiffs' arguments about the meaning of the contract do not run to their implied warranty claim but rather to their breach of contract claim, which remains unchallenged here.  Plaintiffs thus fail to establish any implied warranty under which they may maintain an action, and their claim is deficient as a matter of law.

C. **Conclusion**

For the reasons discussed above, we hold that plaintiffs have failed to state a claim for breach of any implied warranty.  We grant the Host's motion for judgment on the pleadings and dismiss plaintiffs' claim for breach of implied warranties without leave to amend.[9]

---

[9] Plaintiffs did not request leave to amend their complaint, thus we need not address whether it should be granted here.